TELECOMMUNICATIONS RESELLERS
ASSOCIATION, et al., Petitioners

v.

FEDERAL COMMUNICATIONS COM-
MISSION and United States of
America, Respondents

Bell Atlantic NYNEX Mobile,
Inc., et al., Intervenors

No. 97–1071.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 20, 1998.

Decided April 28, 1998.

Lewis J. Paper argued the cause and filed
the briefs for petitioners.

Nancy L. Kiefer, Counsel, Federal Communications Commission, argued the cause for respondents, with whom Joel I. Klein, Assistant Attorney General, U.S. Department of Justice, Catherine G. O'Sullivan and Nancy C. Garrison, Attorneys, Daniel M. Armstrong, Associate General Counsel, Federal Communications Commission, and John E. Ingle, Deputy Associate General Counsel, were on the brief. Roberta L. Cook, Counsel, entered an appearance.

Before: EDWARDS, Chief Judge, WALD and ROGERS, Circuit Judges.

ROGERS, Circuit Judge:

An association of cellular resellers and two of its members seek review of a Federal Communications Commission ("Commission" or "FCC") order denying reconsideration of an earlier order that deferred resolution of their rights to request and receive interconnection with cellular carriers. We deny the petition for review.

**I.**

Companies that seek to sell cellular phone service to consumers must access the national Public Switched Telephone Network ("PSTN")[1] in order to route calls within the United States. A cellular carrier can access the PSTN by "interconnecting" (establishing a physical connection) with either a local telephone company ("local exchange carrier" or "LEC") or another cellular carrier that is itself interconnected with an LEC. Alternatively, a cellular reseller can subscribe to another carrier's cellular service and then resell that service to the public, with or without adding value. *See Interconnection & Resale Obligations Pertaining to Commercial Mobile Radio Servs.*, 10 F.C.C.R. 10666, 10694–95 (1995). Cellular resellers achieve greater flexibility to enhance services or reduce costs by interconnecting, and thus cellular resellers seek to establish their right to request and receive interconnection with other cellular carriers. This petition for review concerns whether the Commission has un-

justifiably deferred its recognition and delineation of these rights.

The Omnibus Budget Reconciliation Act of 1993 ("Budget Act"), Pub.L. No. 103–66, 107 Stat. 312, provides the statutory basis for cellular resellers' claim to interconnection rights. In section 6002(b)(2) of the Budget Act, Congress amended section 332 of the Communications Act of 1934 ("Communications Act"), 47 U.S.C.A. §§ 151–614 (West 1991 & Supp.1998), to read, in part: "Upon reasonable request of any person providing commercial mobile service, the Commission shall order a common carrier to establish physical connections with such service pursuant to the provisions of section 201 of [the Communications Act]." *Id.* § 332(c)(1)(B). Section 201 of the Communications Act reads, in relevant part:

It shall be the duty of every common carrier engaged in interstate or foreign communication by wire or radio to furnish such communication service upon reasonable request therefor; and, in accordance with the orders of the Commission, in cases where the Commission, after opportunity for hearing, finds such action necessary or desirable in the public interest, to establish physical connections with other carriers....

*Id.* § 201(a).

In section 6002(d)(3)(C) of the Budget Act, Congress also directed the Commission to "issue such other regulations as are necessary to implement the amendments made by [section 6002(b)(2)]" within one year of the enactment of the Budget Act. Budget Act § 6002(d)(3)(C). Accordingly, the Commission released a Notice of Proposed Rulemaking on October 8, 1993. *See Implementation of Sections 3(n) & 332 of the Communications Act*, 8 F.C.C.R. 7988 (1993). The Commission requested comment on "proposals that would (1) address the definitional issues raised by the Budget Act; (2) identify various services ... affected by the new legislation and describe the potential regulatory treatment thereof; and (3) delineate the provisions ... of the Communications Act that will be applied to commercial mobile services

---

1. The PSTN is the standard network for telecommunications, a grand amalgam of the intercon-

nected networks of local phone companies across the country.

and those provisions that ... will be forborne." *Id.* at 7988.

After receiving comments from interested parties, the Commission released its Second Report and Order on March 7, 1994. *See Implementation of Sections 3(n) & 332 of the Communications Act,* 9 F.C.C.R. 1411 (1994). In this report, the Commission revised its rules to implement the changes effected by the Budget Act. The Commission did not, however, resolve every issue related to these changes. Of particular note, the Commission reserved the question whether to require commercial mobile radio service ("CMRS")[2] providers (including cellular carriers) "to provide interconnection to other carriers." *Id.* at 1499. The Commission explained: "Because the comments on this issue are so conflicting and the complexities of the issue warrant further examination in the record, we have decided to explore this issue in a Notice of Inquiry." *Id.* Thus, on July 1, 1994, the Commission released a Notice of Proposed Rulemaking and Notice of Inquiry beginning a separate proceeding to investigate this issue and others. *See Equal Access & Interconnection Obligations Pertaining to Commercial Mobile Radio Servs.,* 9 F.C.C.R. 5408, 5458–69 (1994).

Among the parties objecting to the Commission's decision to examine further the rights of those who sought interconnection with cellular carriers and other CMRS providers were petitioners Cellular Service, Inc. ("CSI") and ComTech, Inc. ("ComTech"), two cellular resellers, and the Telecommunications Resellers Association ("TRA")[3], a trade association that represents cellular resellers and resellers of other wireless communications services. These three parties filed administrative petitions on May 19, 1994, asking the Commission to reconsider its Second Report and Order. CSI and ComTech argued that further inquiry was unnecessary and that the relevant statutory language and Commission precedents required that the Commission immediately "recognize the right of cellular resellers to interconnect with the facilities of the FCC-licensed cellular carriers and ... require that interconnection be made available under reasonable terms and conditions." TRA contended that section 6002(d)(3)(C) of the Budget Act required the Commission to issue regulations implementing its provisions no later than August 10, 1994, and that the "plain meaning" of the Budget Act "requires the Commission to order *all* common carriers to interconnect with CMRS providers."[4]

The Commission did not respond to the petitions for reconsideration for quite some time, even after a request for immediate disposition made on January 19, 1996. CSI and ComTech thereafter filed a petition for mandamus in this court on April 9, 1996. The court denied this petition on August 28, 1996, "in light of the ... Commission's representation that it will resolve petitioners' Petition for Reconsideration 'during or promptly after August 1996.'" *In re Cellular Serv., Inc.,* No. 96–1110, 1996 WL 525483 (D.C.Cir. Aug. 28, 1996) (order denying mandamus). After the Commission failed to abide by this condition, on November 14, 1996, CSI and ComTech, joined this time by TRA, filed a renewed petition for mandamus.

On December 20, 1996, before this court ruled on the renewed petition for mandamus, the Commission released its decision denying the petitions for reconsideration,[5] which by

---

2. CMRS refers to radio communication service that is provided for profit and that is made available either to the public or to a class that represents a substantial portion of the public, as specified by the Commission. *See* 47 U.S.C.A. §§ 153(27), 332(d)(1) (West Supp.1998).

3. The party that represented TRA's interest before the agency and initially before the court was the National Wireless Resellers Association ("NWRA"), but NWRA merged with TRA and *assigned to TRA its interest in the matter after* joining CSI and ComTech in filing this petition for review. For clarity's sake, this opinion refers only to TRA, although the actions before the agency attributed to TRA were taken in the names of NWRA and NWRA's predecessor, the National Cellular Resellers Association.

4. Although they did not agree with the separate rulemaking proceeding following the Commission's Notice of Inquiry, these parties also filed comments under this separate proceeding, which is still ongoing before the Commission.

5. The Commission actually received fifteen petitions for reconsideration, but its December 20, 1996, decision dealt only with those filed by CSI, ComTech, and TRA.

that time had languished for more than two-and-a-half years. *See Implementation of Sections 3(n) & 332 of the Communications Act,* 11 F.C.C.R. 19729, 19736 (1996). First, the Commission denied that the Budget Act required it to issue any particular regulations by August 10, 1994: "Since Section 6002(d)(3)(C) grants the Commission discretion to issue such regulations 'as are necessary' to implement the amendments to Section 332, by its plain language, it does not require that the Commission adopt rules implementing every statutory change." *Id.* at 19733. Furthermore, the Commission explained, nothing in the Budget Act grants cellular resellers "an absolute right to interconnection" with CMRS providers, for any such right is subject to the Commission's authority to decide when interconnection is "necessary or desirable in the public interest." *Id.* at 19734 (quoting 47 U.S.C. § 201(a) (1994)). Finally, the Commission found good reason why it should defer final resolution of the issue to a later proceeding, given the complexity of the issues and cellular resellers' continuing "opportunity to file fact-specific complaints concerning CMRS-to-CMRS interconnection disputes, should such disputes arise." *Id.* at 19734–35. The Commission saw no need, at this point, to provide the "interim relief" of "recognizing explicitly the right of cellular resellers to interconnect with licensed cellular carriers." *Id.* at 19735–36.

## II.

■ CSI, ComTech, and TRA petition for review of the Commission's order of December 20, 1996, which reaffirmed its earlier decision to examine cellular resellers' interconnection rights in a separate proceeding. The court reviews orders of the Commission under the arbitrary-or-capricious standard of the Administrative Procedure Act, *see* 5 U.S.C. § 706(2)(A) (1994); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983), and the Commission has broad discretion to manage its docket as it sees fit under this standard: "Absent some unreasonable delay or significant prejudice to the parties, the Commission cannot be said to abuse its discretion merely by adopting pro-cedures and timetables which it considers necessary to effective treatment of complex and difficult problems." *GTE Serv. Corp. v. FCC,* 782 F.2d 263, 273–74 (D.C.Cir.1986); *see also* 47 U.S.C. § 154(j) (1994). Although the Commission's delay in considering the substantive issue has been significant and troubling, it has not been so unreasonable that the court could take the drastic step of directing the Commission as to matters of docket management.

■ Petitioners make three basic arguments in an attempt to show that the Commission's delay was arbitrary and capricious. First, petitioners contend that the Commission's explanation of its decision to postpone resolution of the interconnection issue was inadequate because it failed to reconcile that decision with its own and this court's precedents that address when a request for interconnection is "reasonable." *See, e.g., Public Util. Comm'n of Tex. v. FCC,* 886 F.2d 1325, 1330–31, 1336 (D.C.Cir.1989); *Hush–A–Phone Corp. v. United States,* 238 F.2d 266, 269 (D.C.Cir.1956); *AT&T,* 60 F.C.C.2d 939, 943 (1976). The Commission, however, did not decide that it would deviate from these precedents, just that it needed to develop a more thorough record and analysis before resolving the issue. In the order under review, the Commission only had to justify its decision to defer resolution of the interconnection issue; thus, it had no need to address the substantive precedents stressed by petitioners.

■ Second, petitioners contend that the substantive issue was so clear that the Commission had no legal basis upon which to delay resolution, and thus that the delay was arbitrary and capricious. To the contrary, the merits of the issue are not nearly clear enough to warrant substantive intervention by the court. Petitioners' contention hinges on the language of section 332 of the Communications Act, as amended by the Budget Act. Section 332 provides: "Upon reasonable request of any person providing commercial mobile service, the Commission shall order a common carrier to establish physical connections with such service pursuant to the provisions of section 201 of [the Communica-

tions Act]." 47 U.S.C.A. § 332(c)(1)(B) (West Supp.1998). Thus, petitioners claim, any such "reasonable request" must be honored. Petitioners discount the import of the phrase "pursuant to the provisions of section 201 of [the Communications Act]," but this language is the key to the analysis. Section 201 requires interconnection only "in accordance with the orders of the Commission, in cases where the Commission, after opportunity for hearing, finds such action necessary or desirable in the public interest." 47 U.S.C. § 201(a). The Commission has the authority to issue general rules on when interconnection will be "in the public interest" under section 201, and hence when it will be required under section 332. Although the Commission may ultimately agree with petitioners on the nature of their interconnection rights, the relevant statutory provisions do not represent a directive to do so clear enough for the court to intercede while the Commission considers the issue in an ongoing proceeding. *See Telecommunications Research & Action Ctr. v. FCC,* 750 F.2d 70, 79 (D.C.Cir.1984); *Public Citizen Health Research Group v. FDA,* 740 F.2d 21, 28–33 (D.C.Cir.1984).

■ Third, petitioners contend that the Commission's delay in settling the issue is contrary to law, because section 6002(d)(3)(C) of the Budget Act directs the Commission to "issue such other regulations as are necessary to implement the amendments made by [section 6002(b)(2) ]" within one year of its enactment. Budget Act § 6002(d)(3)(C). Under the Commission's reading, this language provides no deadline for issuing rules regarding the interconnection issue because such rules were not "necessary" to implement the amendments to the Communications Act. This reading is reasonable. *See Implementation of Sections 3(n) & 332 of the Communications Act,* 11 F.C.C.R. at 19733. There is nothing in section 6002(d)(3)(C) or elsewhere that would give the court a basis upon which to grant the petition for review.[6]

## III.

After oral argument, the court requested the Commission to submit a timetable of when it expected to finish the proceeding, and also to show cause why the court should not allow petitioners to amend their complaint to request a writ of mandamus. In response, the Commission represented that "[l]itigation counsel anticipate that the Commission will adopt a final order before the end of the calendar year." The Commission would not (or could not) commit to any firm deadline, however, emphasizing the competing demands on the Commission's scarce resources. As petitioners suggest in their response, the Commission's response is doubly troubling, for the Commission not only fails to establish a firm deadline, but also fails to make any predictions in its own name: whether *"[l]itigation counsel anticipate"* an imminent end to the proceedings has at best indirect bearing on what the Commission will actually do.

By October of this year, five years will have passed since the Commission issued its original notice of proposed rulemaking on the interconnection issue. This delay is already dismaying, *cf. Midwest Gas Users Ass'n v. FERC,* 833 F.2d 341, 359 (D.C.Cir.1987), and the Commission's assurances inspire limited confidence that the end is near. The court denied CSI and ComTech's petition for mandamus because the Commission indicated it would resolve their petition for reconsideration "during or promptly after August 1996." *In re Cellular Serv., Inc.,* No. 96–1110, 1996 WL 525483 (D.C.Cir. Aug. 28, 1996) (internal quotation marks omitted). The Commission indeed resolved the petition for reconsideration, but it still has not resolved the substantive issue of primary concern to petitioners. Petitioners assert that their businesses are suffering as a result; in particular, without interconnection rights, they lose the benefit of the hundreds of thousands of dollars they have spent to develop a specialized switch to interconnect with both cellular carriers and

**6.** We also find unpersuasive petitioners' related contention that the Commission's position that regulations on the interconnection issue were not "necessary" under section 6002(d)(3)(C) is undercut by its decision to begin a rulemaking proceeding on that issue. It is consistent for the Commission in its discretion to begin such a rulemaking proceeding, even though section 6002(b) may not require it.

LECs. The Commission does not suggest to the contrary.

The petition for review, however, asks only that the court review the Commission's order reaffirming its earlier decision to consider the interconnection issue in a separate proceeding, and that order was not arbitrary or capricious. *See supra* Part II. Our denial of the petition for review should not be interpreted to suggest how the court would address a future petition for mandamus and is without prejudice to petitioners' ability to file another petition for mandamus.