315 F.3d 362
 FLORIDA MUNICIPAL POWER AGENCY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent.
Florida Power & Light Company, Intervenor
 No. 01-1381.
 United States Court of Appeals, District of Columbia Circuit.
 Argued November 19, 2002.
 Decided January 21, 2003.
 
 On Petition for Review of Orders of the Federal Energy Regulatory Commission.
 Robert A. Jablon argued the cause for petitioner. With him on the briefs was Daniel I. Davidson.
 Judith A. Albert, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were Cynthia A. Marlette, General Counsel, and Dennis Lane, Solicitor.
 Clifford (Mike) Naeve was on the brief for intervenor.
 Before: SENTELLE, HENDERSON and TATEL, Circuit Judges.
 Opinion for the Court filed by Circuit Judge TATEL.
 TATEL, Circuit Judge:
 
 
 1
 Granted access to Florida Power & Light's electricity transmission lines for the purpose of establishing network transmission service, Petitioner Florida Municipal Power Agency challenges three decisions of the Federal Energy Regulatory Commission rejecting its request for pricing credits. Finding the Commission's decisions supported by substantial evidence and neither arbitrary nor capricious, we deny the petition.
 
 I.
 
 2
 After determining that utilities were discriminatorily denying power suppliers access to electricity transmission lines, the Federal Energy Regulatory Commission issued Order No. 888 requiring public utilities that own, control, or operate transmission facilities to file open access tariffs under which they agree to provide nondiscriminatory access to their transmission networks in addition to the point-to-point service they had been offering. Promoting Wholesale Competition Through Open Access Non-Discriminatory Transmission Services by Public Utilities; Recovery of Stranded Costs by Public Utilities and Transmitting Utilities, Order No. 888, F.E.R.C. Stats. & Regs. ¶ 31,036, 61 Fed.Reg. 21540, 21541, 1996 WL 363765 (1996), clarified, 76 F.E.R.C. ¶ 61,009 and 76 F.E.R.C. ¶ 61,347, 1996 WL 799257 (1996), modified, Order No. 888-A, F.E.R.C. Stats. & Regs. ¶ 31,048, 62 Fed. Reg. 12,274 (1997), order on reh'g, Order No. 888-B, 81 F.E.R.C. ¶ 61,248, 1997 WL 833250, 62 Fed. Reg. 64,688 (1997), order on reh'g, Order No. 888-C, 82 F.E.R.C. ¶ 61,046, 1998 WL 18148 (1998), aff'd Transmission Access Policy Study Group v. FERC, 225 F.3d 667 (D.C.Cir.2000) (per curiam) ("TAPS"), aff'd, New York v. FERC, 535 U.S. 1, 122 S.Ct. 1012, 152 L.Ed.2d 47 (2002). In point-to-point transmission service, utilities pay for energy transmission from designated points of receipt to designated points of delivery. TAPS, 225 F.3d at 725 n. 12. As Order No. 888 explains, however, "[n]etwork service allows more flexibility by allowing a transmission customer to use the entire transmission network to provide generation service for specified resources and specified loads without having to pay multiple charges for each resource-load pairing." Order No. 888, 61 Fed. Reg. at 21,547 n.65. Thus, unlike point-to-point service, network service permits a utility using another utility's transmission lines "to fully integrate load [(the total demand for service on a utility system)] and resources on an instantaneous basis in a manner similar to the transmission owner's integration of its own load and resources." Id. at 21,547.
 
 
 3
 Three additional features of Order No. 888 are relevant to this case. First, the order requires load ratio pricing for network transmission service, a form of transmission that "provides the customer with the same full system ability for transmitting power as the transmission owner." TAPS, 225 F.3d at 725. "Under load ratio pricing, the costs of the transmission system are allocated on the basis of the ratio of the network customer's load to the transmission provider's entire load on its transmission system." Respondent's Br. at 7.
 
 
 4
 The second relevant principle from Order No. 888 responded to arguments made by utility customers (like Petitioner Florida Municipal Power Agency (FMPA)) that because some customers sell power in a way that does not bear on network resources — known as behind-the-meter generation — load ratio pricing's use of total load for determining a customer's rate might require payment for unneeded network transmission. TAPS, 225 F.3d at 725-26. These transmission customers thought they should therefore receive pricing credits for all behind-the-meter facilities. Id. FERC agreed in part. Although holding that customers were entitled to pricing credits for facilities "integrated" into the transmission network, the Commission cautioned that "[t]he fact that a transmission customer's facilities may be interconnected with a transmission provider's system does not prove that the two systems comprise an integrated whole such that the transmission provider is able to provide transmission service to itself or other transmission customers over those facilities — a key requirement of integration." Order No. 888, 61 Fed.Reg. at 21,630 (emphasis in original). "[F]or a customer to be eligible for a credit," FERC explained, "its facilities must not only be integrated with the transmission provider's system, but must also provide additional benefits to the transmission grid in terms of capability and reliability, and be relied upon for the coordinated operation of the grid." Order No. 888-A, 62 Fed. Reg. at 12,330. In other words, FERC would determine credits on a case-by-case basis.
 
 
 5
 Third, Order No. 888 adopts the principle of "comparability," meaning that the same integration standard that applies to transmission customers for the purpose of determining eligibility for pricing credits also applies to transmission providers for rate determination purposes. Order No. 888, 61 Fed.Reg. at 21,630 n.452. Thus, if a transmission provider includes a facility in its rate base, then its transmission customers may receive rate credits for any similarly situated facilities.
 
 
 6
 Running parallel to the development of Order No. 888, and in many respects providing a basis for it, this case began in 1993 when FMPA, a nonprofit public agency that provides point-to-point electric power supply to its twenty-nine member cities that sell retail electricity to the public, developed a plan for offering network transmission service. FMPA requested the right to purchase transmission service from Intervenor Florida Power & Light, owner of the state's largest transmission system. When Florida Power rejected that request, FMPA filed a complaint with FERC. Granting FMPA's request for network transmission service, FERC ordered the parties to agree on rates, conditions, and terms of service within sixty days. Fla. Mun. Power Agency v. Fla. Power & Light Co., 65 F.E.R.C. ¶ 61,125, 1993 WL 594575 (1993), reh'g dismissed, 65 F.E.R.C. ¶ 61,372, 1993 WL 531359 (1993).
 
 
 7
 When FMPA and Florida Power failed to reach an agreement, FERC issued a final order addressing cost-of-service issues. Fla. Mun. Power Agency v. Fla. Power & Light Co., 67 F.E.R.C. ¶ 61,167, 1994 WL 182802 (1994) ("FMPA I"). Foreshadowing Order No. 888, FERC adopted Florida Power's load ratio pricing proposal, but agreed that in certain circumstances FMPA might be entitled to pricing credits for facilities that are "integrated" into Florida Power's network. The Commission explained:
 
 
 8
 If FMPA has transmission facilities that will operate as part of the integrated transmission system, a credit would be reasonable. Indeed, this is in line with Florida Power's position that it is redefining the native load served by the Florida Power transmission system to include all of FMPA's resources and loads. If FMPA owns grid facilities that are now used to integrate the same resources and loads, those facilities are part of the integrated transmission system, and Florida Power must include an appropriate credit for any such grid facilities when it submits its compliance filing in this case.
 
 
 9
 Id. at 61,482 n. 76.
 
 
 10
 In 1996, acting on several requests for rehearing, FERC rejected FMPA's argument that Florida Power had improperly refused to grant FMPA pricing credits, holding that none of FMPA's facilities was integrated into Florida Power's network. Fla. Mun. Power Agency v. Fla. Power & Light, 74 F.E.R.C. ¶ 61,006, 1996 WL 12316 (1996) ("FMPA II"). At the same time, FERC recognized the comparability principle that later found its way into Order No. 888: "Just as FMPA cannot obtain credit for facilities not used by Florida Power to provide service, so Florida Power cannot charge FMPA for facilities not used to provide transmission service." Id. at 61,010 n. 48.
 
 
 11
 In FMPA II, FERC rejected FMPA's request to supplement the record to include evidence relating to a facility FMPA operates in Lake Worth, Florida, as well as evidence relating to the "Rate Case." Id. at 61,007. The latter refers to a separately docketed FERC proceeding that began in 1993 when Florida Power filed a proposed tariff adjustment that would have affected the prices it charged transmission users, including FMPA. Fla. Power & Light Co., 64 F.E.R.C. ¶ 61,361, 1993 WL 376862 (1993). Although Florida Power and FMPA reached a settlement, that settlement did not resolve FMPA's claim that Florida Power's rate base should be adjusted to exclude facilities that are not "integrated" with the rest of Florida Power's transmission system. Fla. Power & Light Co., 92 F.E.R.C. ¶ 61,241, 2000 WL 1342510 (2000). This issue, referred to as a "reserved issue," remains pending before the Commission. Respondent's Br. at 10. In FMPA II, therefore, FERC denied FMPA's request that "if the Commission rejects the proposed credits for FMPA facilities, Florida Power be directed to exclude from its transmission rates the cost of transmission facilities that FMPA believes are not part of the integrated grid...." FMPA II, 74 F.E.R.C. at 61,010 n. 48. "This issue," the Commission explained, "is among the rate issues being litigated in the Rate Case, and the parties have agreed that all rate issues will be resolved in the Rate Case." Id.
 
 
 12
 Finally, in FMPA III, the Commission denied FMPA's second petition for rehearing. Fla. Mun. Power Agency v. Fla. Power & Light, Co., 96 F.E.R.C. ¶ 61,130, 2001 WL 849818 (2001). Rejecting FMPA's request for pricing credits, FERC again held that FMPA failed to demonstrate that its facilities were integrated into Florida Power's network. Id. at 61,545. FERC also ruled that FMPA's contention that the Commission should "reduce the Florida Power rate base to be consistent with a disallowance of FMPA facilities that are necessary to connect generation and load" fell outside the scope of the instant proceeding. Id. Noting FMPA's argument that the rate base reduction issue "was among the reserved issues in the settlement proceeding," FERC explained that "the reservation of an issue in one proceeding does not operate to transfer such issue to another proceeding." Id.
 
 II.
 
 13
 FMPA now challenges the Commission's denial of pricing credits in FMPA I, FMPA II, and FMPA III. We review FERC's orders under the arbitrary and capricious standard and uphold FERC's factual findings if supported by substantial evidence. See, e.g., Pacific Gas & Elec. Co. v. FERC, 306 F.3d 1112, 1115 (D.C.Cir.2002); Process Gas Consumers Grp. v. FERC, 292 F.3d 831, 836 (D.C.Cir. 2002). "The `substantial evidence' standard," we have explained, "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." FPL Energy Me. Hydro LLC v. FERC, 287 F.3d 1151, 1160 (D.C.Cir.2002) (internal citation omitted).
 
 
 14
 FMPA argues that the Commission erred by excluding evidence from the Rate Case, or alternatively, that it improperly refused to consolidate the Rate Case with the FMPA cases. As to its first argument, FMPA claims not that the excluded evidence pertains directly to the integration of its facilities, but rather that FERC has allowed Florida Power to include facilities in its rate base that are identical to FMPA facilities in terms of network benefits. According to FMPA, because the comparability principle requires equal treatment of transmission providers and users, the Commission must grant FMPA credit for facilities similar to ones the Commission allowed Florida Power to include in its rate base. We disagree.
 
 
 15
 To begin with, FMPA never argues — fatally for its position — that Rate Case evidence directly establishes that its facilities are integrated into Florida Power's network. Moreover, even if FERC treats FMPA facilities differently from similar Florida Power facilities, the Commission's denial of pricing credits does not violate the comparability principle for an obvious reason: FERC has yet to rule on FMPA's request for reductions in Florida Power's rate base. See Petitioner's Br. at 16 (noting that the Commission has not ruled on reductions in Florida Power's rate base). "As a theoretical matter," FMPA concedes, "FERC could order relief in the Rate Case." Petitioner's Br. at 20. Theoretical? That FERC "could order relief in the Rate Case" is dispositive. Until FERC resolves FMPA's request for reductions in Florida Power's rate base (one of the "reserved issues"), FERC's denial of pricing credits cannot violate the comparability principle. FERC's exclusion of Rate Case evidence was thus not an abuse of discretion.
 
 
 16
 Nor did FERC improperly refuse to consolidate the Rate Case with the FMPA proceedings. Administrative agencies enjoy "broad discretion" to manage their own dockets, Telecomm. Resellers Assoc. v. FCC, 141 F.3d 1193, 1196 (D.C.Cir.1998), and FMPA offers no reason to believe that FERC abused that discretion in this case. Even if, as FMPA claims, FERC has unreasonably delayed deciding the Rate Case, the place for resolving that issue is there, not here.
 
 
 17
 FMPA next argues that FERC ignored evidence demonstrating the integration of its facilities with those of Florida Power's. This contention appears to rest almost entirely on FERC's statement in FMPA III that "FMPA has not demonstrated, nor does FMPA even argue, that its facilities meet the [integration] test." FMPA III, 96 F.E.R.C. at 61,545. "These statements," FMPA insists, "show that FERC was unaware of and, therefore, could not have considered basic evidence and argument of integration." Petitioner's Br. at 21. Other statements in FMPA III, however, indicate that FERC understood FMPA's arguments and its evidence, but found them insufficient to justify granting credits. "The key issue in the case," the Commission wrote in FMPA III, "is whether FMPA's facilities are integrated with Florida Power's transmission system.... In FMPA II, the Commission found that a credit was not appropriate." FMPA III, 96 F.E.R.C. at 61,543. The Commission also discussed its core finding in FMPA II that FMPA's facilities are "interconnected with Florida Power's facilities [,] ... not integrated" with them. Id. Because FMPA presented no new evidence of integration in FMPA III — a point FMPA counsel conceded at oral argument — FERC's reliance on findings and conclusions from FMPA II was entirely appropriate.
 
 
 18
 So what did FERC mean when it said that FMPA neither argued nor presented sufficient evidence of integration? We have no idea. The Commission's brief provides no explanation, nor was agency counsel able to do so at oral argument. This enigma is not fatal, however, for under our deferential standard of review, we uphold agency decisions if supported by substantial evidence, "notwithstanding their expository shortcomings." Pan-Alberta Gas, Ltd. v. FERC, 251 F.3d 173, 176 (D.C.Cir. 2001).
 
 
 19
 Here, substantial evidence supports FERC's denial of pricing credits. Florida Power's expert testified that five of the seven FMPA cities at issue — Key West, Lake Worth, Clewiston, Green Cove Springs, and Jacksonville Beach — "are interconnected only with the [Florida Power] transmission system" and that each city is essentially a "`dead-end' off the [Florida Power] system, in that ... power delivered from the Florida Power transmission system necessarily must be consumed wholly within the city." Third Adjemian Aff. ¶ 7. The expert also testified that the five FMPA facilities provide no benefit to the Florida Power network: "[W]hile the internal facilities enable each utility to distribute power within its own system, the facilities in no way reduce [Florida Power's] costs in integrating the loads of each city with all of FMPA's other network resources because they do not impact the facilities required by [Florida Power] to transmit power to and from these utilities." Id. ¶ 16. Although FMPA's other two cities — Ft. Pierce and Vero Beach — interconnect to Florida Power's network at multiple points, Florida Power's expert testified that those "facilities do not reduce [Florida Power's] costs in providing network transmission service because the [Ft. Pierce-Vero Beach] line has a negligible electrical impact on [Florida Power's] ability to transmit power to and from the two cities." Id. ¶ 18. It is true, as FMPA points out, that the expert also testified that "a negligible amount of power can flow over the line," but the expert further explained that this flow provided no benefit to Florida Power because "even without the line, [Florida Power] is able to deliver power to retail customers in that area and to transmit power to [Florida Power's] other load centers in South Florida." Third Adjemian Aff. ¶ 19. According to FMPA, Florida Power relied on the Ft. Pierce-Vero Beach line during a planned transmission system outage, but Florida Power presented evidence that the line may not actually have assisted its network and that it had sufficient capacity to serve its customers during the outage. See Fourth Adjemian Aff. at ¶ ¶ 2-7; Birch Aff. ¶ ¶ 7, 10.
 
 
 20
 Based on this and other record evidence, FERC concluded that "[t]he transmission facilities of most FMPA members are interconnected with the Florida Power transmission system at single points that are used only to transfer power between the Florida Power transmission system and each FMPA member's transmission system." FMPA II, 74 F.E.R.C. at 61,010. The Commission further explained:
 
 
 21
 While the FMPA facilities may serve a transmission function on the FMPA side of the interconnection point between FMPA and the Florida Power system, they are not used by Florida Power to provide transmission service to FMPA or any other party. Nor are they used to transmit Florida Power's power to its non-FMPA customers.
 
 
 22
 Id. Crediting Florida Power's expert regarding the Ft. Pierce-Vero Beach lines, FERC also concluded that the lines were not integrated because they provided, at best, "unneeded redundancy" with Florida Power's network. Id. The Commission explained, "[a]n integrated transmission system (as opposed to two interconnected transmission systems) is comprised of transmission facilities operated as part of the same network, integrating all resources and loads on that network." Id.
 
 
 23
 To be sure, FMPA points to some contradictory evidence. See Petitioner's Br. at 22-23 (arguing that FMPA facilities benefit Florida Power by increasing reliability and that the Ft. Pierce-Vero Beach lines allow Florida Power to sell power in South Florida, increase Florida power grid capacity, and effect Florida Power planning). The question we must answer, however, is not whether record evidence supports FMPA's version of events, but whether it supports FERC's. Ark. Elec. Energy Consumers v. FERC, 290 F.3d 362, 367 (D.C.Cir.2002) (explaining court's limited role in reviewing FERC decision under "substantial evidence" standard). Applying our deferential standard of review — a particularly deferential standard where, as here, FERC decided between "disputing expert witnesses," Wis. Valley Improvement Co. v. FERC, 236 F.3d 738, 746-47 (D.C.Cir.2001) — we have no doubt that the Commission's decision to deny credits is supported by substantial evidence. See supra pp. 367-68.
 
 
 24
 FMPA's remaining challenges are equally unpersuasive. FMPA says that FERC failed to consider evidence regarding Key West. But the lone document FMPA cites never mentions Key West; instead, it discusses FMPA's general arguments regarding integration which FERC addressed in FMPA II. See Fourth Malmsjo Aff. ¶ 19. FMPA says that FERC improperly rejected its motion to lodge Florida Power's proposal to buy the Lake Worth utility (allegedly showing that Florida Power would have included Lake Worth in its rate base) and ignored Breaker Diagrams showing the configuration of Florida Power's system. But because both the Lake Worth evidence and the Breaker Diagrams relate to Florida Power's rate base, not to the integration of FMPA's facilities, FERC properly excluded them for the same reason that it properly excluded the rest of the Rate Case evidence. See supra pp. 366-67. FMPA says that the Commission applies the integration standard inconsistently, but we rejected just that argument in TAPS. See TAPS, 225 F.3d at 726-27 (describing FERC's discussion of integration in FMPA I and FMPA II as "completely consistent with the Commission's resolution of the credits issue in the proceedings before us").
 
 
 25
 Finally, FMPA argues that FERC's recently published Standard Market Design Notice of Proposed Rule Making, see Remedying Undue Discrimination Through Open Access Transmission Service and Standard Electricity Market Design, 67 Fed. Reg. 55452 (Aug. 29, 2002) ("SMD-NPRM"), "appears to reflect a significant shift in Commission policy," Petitioner's Rep. Br. at 6-10, regarding the integration standard, thus requiring remand pursuant to Williston Basin Interstate Pipeline Co. v. FERC, 165 F.3d 54, 62-63 (D.C.Cir. 1999) (holding that agency's adoption of new rule during judicial proceeding requires immediate remand of pending cases involving discarded rule). The NPRM, however, expressly states that it does not resolve any issues relating to integration. "Which facilities will or will not be under a [Regional Transmission Organization's] operational control," the Commission explained, "does not predetermine transmission pricing, cost allocation, or rate design determinations...." SMD-NPRM, 67 Fed.Reg. at 55,500 n.173. In any event, and unlike the rule at issue in Williston, FERC has yet to finalize the NPRM. Even if, as FMPA suspects, FERC is applying the NPRM in other proceedings, adversely affected parties in those cases may challenge the Commission's actions pursuant to 16 U.S.C. § 8251(b).
 
 
 26
 The petition for review is denied.
 
 
 27
 
 So ordered.