NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0917n.06
Filed: December 20, 2006

**Case No. 05-4543**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| TIM GRAY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES |
| | ) | DEPARTMENT OF |
| UNITED STATES DEPARTMENT | ) | AGRICULTURE |
| OF AGRICULTURE, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |

**BEFORE:  BATCHELDER and GRIFFIN, Circuit Judges; PHILLIPS[*], District Judge.**

**ALICE M. BATCHELDER, Circuit Judge.**  Petitioner Tim Gray ("Gray") appeals the

United States Department of Agriculture's ("USDA") decision finding him in violation of the Horse

Protection Act ("HPA"), 15 U.S.C. § 1821 *et seq*.  On appeal Gray argues that the Administrative

Law Judge ("ALJ") committed procedural errors rendering the USDA's judgment "null and void."

Because Gray's arguments are without merit, we affirm the decision of the USDA.

**I.  Background**

In 2001, the Administrator ("Administrator") of the Animal and Plant Health Inspection

Service ("APHIS"), an agency of the USDA, filed a complaint against Gray, Sand Creek Farm, Inc.

---

[*]The Honorable Thomas W. Phillips, United States District Judge for the Eastern District of Tennessee,
sitting by designation.

("Sand Creek"), William B. Johnson, and Sandra Johnson, alleging that they violated the HPA, 15 U.S.C. § 1824(2), by entering a horse in a show or exhibition while that horse was "sore." The case was assigned to ALJ Jill S. Clifton, and a hearing was set for March 2004. One week before the hearing, the respondents moved for a continuance because Gray had suffered injuries that prevented him from attending the hearing. The Administrator opposed the continuance, or in the alternative, moved to sever Gray from the proceedings. The ALJ decided to sever Gray so that the proceedings could continue against the Johnsons. Moreover, because Sand Creek could not obtain a fair hearing without Gray's participation, the ALJ also severed Sand Creek from the original action, and consolidated Sand Creek and Gray in a separate proceeding.

The hearing against Gray and Sand Creek was set for Monday, March 7, 2005. However on Thursday, March 3, the Administrator filed a motion to summarily resolve the matter against Sand Creek. After a series of teleconferences on Friday, March 4, the ALJ excused Sand Creek from the March 7 hearing in order to provide Sand Creek with additional time to respond to the Administrator's March 3 motion. Nevertheless, in an effort to continue in an "orderly" and "efficient" fashion, the ALJ announced that she would proceed with the March 7 hearing against Gray. The ALJ entered an order severing the parties and assigning separate docket numbers to the recently divided proceedings.

Up to this point, Gray had been proceeding *pro se* and candidly admitted that he was "riding the coattails" of, and utterly depending on, Sand Creek for legal assistance. Because the proceedings were severed on Friday and the hearing was set for Monday, Gray was unable to find counsel on such short notice. At the beginning of the hearing, however, the ALJ noted that she "would hear [Gray] out" if he requested a continuance to obtain counsel. Despite Gray's complaints that he did not know

2

what to do or how to act at the hearing, he did not request a continuance.

At the close of evidence, the ALJ issued an oral decision, concluding that Gray had violated the HPA, 15 U.S.C. § 1824(2)(b), by entering a horse in a show or exhibition while that horse was sore. The ALJ then ordered Gray to pay a civil penalty of $2,200 and disqualified him from participating in any horse shows or exhibitions for a two-year period. Finally, the ALJ scrupulously outlined Gray's rights of appeal to the Judicial Officer ("JO") and provided him with a copy of the relevant appellate rules.

Following the ALJ's decision, Gray obtained numerous continuances of his administrative appeal deadline. Despite these continuances, however, Gray filed his appeal beyond the allotted time period. As a result of this untimely filing, the JO denied his claim. The JO also rejected Gray's argument that his proceeding was not final because the ALJ had no authority to sever it. Gray filed a petition for reconsideration with the JO, which was denied, and he then filed a timely notice of appeal with this Court.

## II. Analysis

On appeal Gray argues that the ALJ did not have "power" to issue a decision against him. More specifically, he contends that the ALJ's decision was "null and void" because she lacked authority to sever proceedings under the Rules of Practice Governing Formal Adjudicatory Proceedings Instituted by the Secretary under Various Statutes ("Rules of Practice"). We reject the premise of Gray's argument -- that an ALJ lacks authority to sever proceedings -- and find his position unpersuasive.

While the Rules of Practice do not explicitly authorize severance of proceedings, we find that the severance orders in Gray's proceedings were supported by other provisions in the Rules of

3

Practice. The Rules of Practice expressly authorize an ALJ to hold conferences to "expedite" the proceedings, *see* 7 C.F.R. § 1.140(a)(1), and to consider "matters as may expedite and aid in the disposition of the proceeding," *see* 7 C.F.R. § 1.140(a)(3)(ix). In our case, the ALJ granted the first severance request because Gray was injured and unable to attend the hearing. The ALJ thereafter ordered the second severance to provide Sand Creek with additional time to respond to a motion, and the ALJ, in an effort to proceed in an "orderly" and "efficient" fashion, saw no reason to delay Gray's hearing. In both instances, the ALJ was acting to expedite the timely disposition of the proceedings, as she was authorized to do under the Rules of Practice.[1] We therefore conclude that even though the Rules of Practice do not expressly authorize an AJL to sever proceedings, the severance orders in Gray's case were implicitly permitted under other provisions of the Rules of Practice. Moreover, it is well-settled that "[a]dministrative agencies enjoy 'broad discretion' to manage their own dockets," *see Florida Mun. Power Agency v. Fed. Energy Regulatory Comm'n*, 315 F.3d 362, 366 (D.C. Cir. 2003), and as expressed above, the ALJ did not abuse her "broad discretion" in issuing the severance orders in this case.

Gray's arguments imply that the ALJ's second severance prejudiced him by affording inadequate time to obtain counsel. We find that any prejudice Gray experienced was caused by his admitted choice to depend on Sand Creek for legal assistance. Moreover, at the beginning of the hearing, the ALJ indicated that she would seriously entertain a request for a continuance; however, Gray did not request one. In light of these facts, we determine that Gray was not unfairly prejudiced by the ALJ's decision to sever his proceedings.

---

[1]Gray does not allege -- and indeed the record does not indicate -- that he objected to the ALJ's decision to sever the proceedings.

Finally, Gray contends -- without citing any legal authority -- that even if the ALJ did not err in severing his proceedings, she lacked authority to issue her decision because she was not formally "appointed as judge" over the newly severed proceedings. It is clear that ALJ Clifton was assigned to the original proceedings involving Gray, and we therefore find that she acted within her discretion in continuing to preside over Gray's post-severance proceedings.

### III. Conclusion

For the foregoing reasons, we conclude that the ALJ did not err in severing Gray's proceedings, nor did she err in presiding over the post-severance proceedings. Consequently, we deny Gray's appeal and affirm the USDA's decision finding Gray in violation of the HPA.