# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 23-5186

September Term, 2024

FILED ON: OCTOBER 8, 2024

CAITLIN E. O'HARE,
APPELLANT

v.

MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-01939)

Before: PILLARD and GARCIA, *Circuit Judges*, and ROGERS, *Senior Circuit Judge*

## J U D G M E N T

This appeal was considered on the record and on the briefs and oral arguments of the parties. The panel has afforded these issues full consideration and has determined that they do not warrant a published opinion. *See* Fed. R. App. P. 36; D.C. Cir. R. 36(d). It is

**ORDERED AND ADJUDGED** that the decision of the United States District Court for the District of Columbia be **AFFIRMED**.

## I.

Appellant, Caitlin E. O'Hare, seeks disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This court, like the district court, reviews the final decision of the Commissioner of Social Security only to determine whether the decision rests on proper legal standards and is supported by substantial evidence. 42 U.S.C. § 405(g); *Saunders v. Kijakazi*, 6 F.4th 1, 4 (D.C. Cir. 2021). O'Hare contends that the August 10, 2016, decision of the Administrative Law Judge ("ALJ") finding that as of December 9, 2012, she was not disabled was neither supported by material evidence nor in compliance with the controlling legal standard. Appellant's Br. 14. She maintains that the ALJ failed both to consider material evidence and to accord "substantial weight" to the uncontradicted, well-supported, consistent opinions of her treating physicians. *Id.* at 40.

To prevail on her disability claim, O'Hare needed to present evidence that her disability left her unable to earn a living. 42 U.S.C. § 1382c(a)(3)(A), (B); *Cox v. Kijakazi*, 77 F.4th 983, 986-87 (D.C. Cir. 2023). The ALJ determined upon considering the treating and state agency physicians' evidence and vocational expert evidence that O'Hare retained sufficient residual functional capacity to perform a range of jobs available in the national economy. ALJ Dec. at 13-15. For the following reasons, the court concludes that O'Hare has failed to show that determination was inconsistent with applicable law or unsupported by substantial evidence, *see Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004). Although the substantial evidence standard "requires more than a scintilla" of evidence, it "can be satisfied by something less than a preponderance of the evidence." *Id.* (citing *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365-66 (D.C. Cir. 2003), *cert. denied*, 540 U.S. 946 (2003)).

Applicable regulations and precedent require the Commissioner of Social Security, in the absence of "good reasons" to the contrary, to give "controlling weight" to a treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Cox*, 77 F.4th at 987; *Butler*, 353 F.3d at 1003. The administrative record shows that the ALJ considered those opinions in context and in view of other record evidence. The ALJ recognized O'Hare's severe impairments that significantly limited her functioning at certain times — postural orthostatic tachycardia syndrome ("POTS"), Ehlers-Danlos syndrome, migraines, chronic fatigue syndrome, gastritis, irritable bowel syndrome, and obesity. ALJ Dec. at 3. He also recognized that she had an affective mood disorder, anxiety-related disorder, and sleep-related disorder, while concluding they did not affect her functioning to the same degree. *Id.* at 3-4. Overall, the ALJ explained that the record showed her symptoms improved and were controlled with medications for much of the relevant period. *Id.* at 7-11. He accordingly afforded little weight to certain physical limitations referenced by her treating physicians Dr. Houry, Dr. Solomon, and Dr. Hashefi, finding they were not supported by each source's treatment notes or consistent with the entire record. *Id.* at 12. He noted Dr. Houry's March 2015 statement that O'Hare was doing "great" on her current treatment regime; Dr. Solomon's November 2015 treatment note describing O'Hare's symptoms as "dramatically improved" with medication; and repeated indications in Dr. Hashefi's notes that Plaquenil significantly alleviated her joint pain. *Id.* at 7-8, 12.

O'Hare's briefing and oral argument take positions on her disability on which she cannot prevail under a substantial evidence standard of review. *See, e.g.*, Appellant's Br. ii-iii and the responsive brief of the Commissioner of Social Security, Appellee's Br. at 23ff. To take one example, O'Hare maintains that Dr. David "ordered [her] onto partial bedrest and off work" for "a period of 14 months." Appellant's Br. 41-43, 51; *see* Reply Br. 3-4. Yet Dr. David's note of record from March 2013 in support of her medical leave recommends only "2-12 weeks depending on course of treatment." J.A. 267. O'Hare's employer does acknowledge in an undated letter receiving an additional "physician's note," but the physician's note is not in the record and, in any event, O'Hare's employer extended O'Hare's medical leave for only six months, beginning June 12, 2013. J.A. 163. The nine-month period from March 12, 2013, through December 12, 2013, falls short of the one-year minimum to establish disability. 42 U.S.C. § 423(d)(1)(A).

## II.

O'Hare's briefing and oral argument make clear, however, that the critical issue is whether it is credible that she had to elevate her legs for most of the day. Hence, the court focuses on this issue. It too is illustrative of O'Hare's tendency to isolate portions of her treating physicians' statements without acknowledging her medical improvements and control of symptoms that she and her physicians noted following periodic adjustments to her medications and treatment.

The ALJ determined that O'Hare could perform the work of a retail sales associate and that, in the alternative, she could adjust to other sedentary work available in the national economy. ALJ Dec. at 13-15. O'Hare insists that Dr. Solomon's April 29, 2016, medical source statement shows that her symptoms required her to elevate her legs much of the day to control her POTS symptoms, thereby precluding her from substantial gainful work activity. Appellant's Br. 43-44, 52-53. Dr. Solomon stated that "per patient" O'Hare could only sit or stand/walk "less than two hours" in an 8-hour working day. Dr. Solomon's Apr. 2016 med. source statement at 1. The ALJ rejected O'Hare's interpretation of Dr. Solomon's statement, noting that Dr. Solomon's treatment note in November 2015 stated that O'Hare's POTS symptoms "had dramatically improved." ALJ Dec. at 12 (quoting Dr. Solomon's Nov. 2015 treatment note at 1). Dr. Solomon also identified only two persisting symptoms — headaches and insomnia. *Id.* Further, in the same treatment note, Dr. Solomon reported that from a cardiac point of view O'Hare was "doing very well." *Id.* (quoting Dr. Solomon's Nov. 2015 treatment note at 1, 2). The ALJ noted that Dr. Solomon had seen O'Hare only four times over two years. *Id.*

The Social Security Administration "will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." SSR 16-3p, *Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, 2017 WL 5180304, at *5 (SSA Oct. 2017). Here the ALJ considered O'Hare's subjective statements about her symptoms but found that they were outweighed by the countervailing statements from her treating physicians. This is permitted under SSR 16-3p. *See id.* at *5-6.

O'Hare maintains that by not giving substantial weight to certain physical limitations referenced by her treating physicians, the ALJ applied an unlawful legal standard, effectively requiring objective medical evidence of the limitations from which she was suffering rather than crediting her subjective complaints. Appellant's Br. 32-36. It is true the medical diagnosis and doctors' notes often relied on the patient's reports of symptoms and limitations. Nothing appears out of the ordinary in doing so here. The fact that Dr. Solomon's source statement labeled the limitation on sitting, standing, or walking as "per patient" might not alone support the ALJ giving it "little weight." Nor does the infrequency of O'Hare's in-person medical appointments, which were interspersed with more frequent messages on an online patient portal, mean that Dr. Solomon lacked the opportunity to form a reliable opinion. *See* Appellant's Br. at 43-44; Reply Br. 13. But the record shows that the ALJ looked beyond the statements isolated by O'Hare to the physicians' qualifying statements. For example, O'Hare focuses on Dr. Solomon's statement that she "needs

4

to elevate her legs." *See* Dr. Solomon's Apr. 2016 med. source statement at 2. The ALJ discredited the April 2016 medical source statement in view of Dr. Solomon's November 2015 treatment notes when he last saw O'Hare. ALJ Dec. at 12 (referencing Dr. Solomon's Nov. 2015 treatment note at 1-2). That included a treatment note where Dr. Solomon mentioned her only symptoms were headaches and insomnia — not, for example, edema or any cardiac symptom calling for leg elevation. The ALJ also pointed to Dr. Solomon's statements in his treatment note that O'Hare's POTS symptoms "had dramatically improved" and she was "doing very well" from a cardiac point of view. Considered altogether, the ALJ's analysis demonstrates that he gave "good reasons" for not treating Dr. Solomon's source statement as establishing that O'Hare needed to keep her legs elevated most of the time.

Accordingly, in this fact-bound case where interpretation rather than objective fact is disputed, O'Hare has failed to show that the ALJ's interpretation of the record was contrary to law or that his factual determinations are unsupported by substantial evidence, and the court affirms the district court's rejection of her challenges to the decision of the Commissioner of Social Security.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*. *See* Fed. R. App. P. 41(b); D.C. CIR. R. 41.

**Per Curiam**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY: /s/
Daniel J. Reidy
Deputy Clerk