**PG&E GAS TRANSMISSION, NORTH-WEST CORPORATION, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

Avista Corporation, et al., Intervenors.

No. 01–1167.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 11, 2002.

Decided Jan. 21, 2003.

Stefan M. Krantz argued the cause for petitioner. With him on the briefs were Lee A. Alexander and Debra H. Rednik. Carl M. Fink entered an appearance.

Laura J. Vallance, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were Cynthia A. Marlette, General Counsel, and Dennis Lane, Solicitor.

Before: SENTELLE, RANDOLPH and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

PG&E Gas Transmission, Northwest Corporation (PG&E) petitions for review of Federal Energy Regulatory Commission (FERC) orders suspending, *PG&E Gas Transmission, Northwest Corp.*, 90 F.E.R.C. ¶ 61,349, 2000 WL 337605 (2000), and then rejecting, 92 F.E.R.C. ¶ 61,202, 2000 WL 1310693 (2000), *reh'g denied*, 94 F.E.R.C. ¶ 61,119, 2001 WL 112330 (2001), PG&E's tariff filing, in which it sought to change its method for allocating natural gas transportation capacity. FERC claims that PG&E's petition is moot because FERC later approved an alternative method of allocating capacity. We disagree. Reaching the merits of the petition, we hold that FERC failed to adequately address relevant Commission precedent and thus acted arbitrarily in denying PG&E's filing. Therefore, we grant the petition for review and vacate FERC's orders and remand for further consideration in light of this opinion.

## I. Background

PG&E operates a natural gas pipeline running 612 miles from the Washington/Canada border to the border between Oregon and California. On its pipeline, PG&E sells two primary types of natural gas transportation capacity—firm and interruptible. Firm capacity is purchased on a monthly basis and cannot be interrupted or curtailed except in limited circumstances. Interruptible transportation (IT) capacity can be interrupted when necessary to provide service to higher priority customers, such as firm customers. IT capacity is bid for as needed, rather than purchased monthly. PG&E's gas tariff sets the maximum per-mile rates PG&E can charge for its IT services. The total amount a shipper pays for service, and thus the revenue generated, is derived by multiplying the per-mile bid by the number of miles the gas is to be transported.

Prior to the proceedings under review, PG&E allocated IT capacity first to shippers bidding the maximum per-mile rate, regardless of distance, and hence regardless of revenue. PG&E then allocated any remaining capacity to shippers bidding less than the maximum per-mile tariff rate by ranking bids based on total revenue. Ties between bidders, at both the maximum and sub-maximum rates, were broken according to a shipper's position in the IT queue. Thus, if two shippers' bids were tied, the shipper with the higher position in the queue would be allocated the IT capacity. Queue positions were determined by a lottery held by PG&E in 1987. *See Pacific Gas Transmission Co.*, 40

F.E.R.C. ¶ 61,193, at 61,615, 1987 WL 117714 (1987).

On March 1, 2000, PG&E submitted a tariff filing pursuant to Section 4 of the Natural Gas Act, 15 U.S.C. § 717c (2000) (NGA), seeking to change its IT capacity allocation method. PG&E proposed to use the system it employed to rank sub-maximum rate bidders to rank bids from maximum rate bidders as well. Under this "revenue-based" or "distance-based" proposal, allocation would be based on net revenue generated per dekatherm, with net revenue being determined by multiplying the distance in pipeline miles from the receipt point to the delivery point by the rate bid plus surcharges. Consequently, a long-haul maximum rate bidder would always defeat a shorter-haul maximum rate bidder, because the long-haul shipper's total bid would always generate greater revenue. If any ties remained between bids generating the same net revenue, capacity would be allocated *pro rata*—that is, each tied bidder would receive a proportionate share of the remaining capacity. In sum, under PG&E's filing, the IT queue would be replaced with revenue-based allocation followed by a *pro rata* tiebreaker. On March 31, 2000, the Commission accepted and suspended FERC's tariff filing, and asked PG&E to provide further "justification as to the benefits gained by the pipeline and its shippers if such a change is implemented." *PG&E Gas Transmission, Northwest Corp.*, 90 F.E.R.C. ¶ 61,349, at 62,154 (Suspension Order). PG&E filed additional supporting evidence for its proposal and sought rehearing of the Suspension Order, claiming that the Suspension Order improperly required PG&E to submit evidence of the unreasonableness of the IT queue and the superiority of its proposed distance-based allocation mechanism. Under NGA § 4, PG&E contended, a pipeline proposing a rate change need only prove that its proposed rate is "just and reasonable."

On September 14, 2000, FERC rejected PG&E's revenue-based allocation proposal. *PG&E Gas Transmission, Northwest Corp.*, 92 F.E.R.C. ¶ 61,202, 2000 WL 1310693 (2000) (*PG&E I*). The Commission held that the revenue-based mechanism would unduly discriminate against maximum rate short-haul shippers because longer-haul maximum rate shippers could always outbid shorter-haul shippers for capacity, even though both would be bidding the same per-mile rate. *Id.* at 61,677. *Cf.* 18 C.F.R. § 284.9(b) (2002) (banning undue discrimination in the allocation of IT capacity by reference to 18 C.F.R. § 284.7(b)). FERC explained that this result would contradict the Commission's policy of allocating capacity to those who value it most, since, at the maximum rate, both short-haul and long-haul shippers value the capacity equally. *PG&E I,* 92 F.E.R.C. at 61,677. Nonetheless, FERC realized that the IT queue may be complex, inefficient, and administratively burdensome. *Id.* at 61,676. Thus, FERC did not preclude PG&E from submitting a later proposal to replace the queue, *id.* at 61,677, and FERC noted that it had "accepted other methods of allocating capacity when shippers all bid the maximum rate, such as pro rata," *id.* at 61,676. Finally, FERC rejected PG&E's request for rehearing of the Suspension Order. *Id.* at 61,677–78. The Commission held that it was justified in seeking further evidentiary support for the relative benefits of PG&E's distance-based mechanism in light of protesters' concerns about discrimination against short-haul shippers. *Id.* at 61,678.

Shortly after FERC's ruling in *PG&E I,* PG&E submitted a new tariff filing that replaced the queue with simple *pro rata* allocation among all maximum rate bidders. Under that tariff, each maximum rate bidder receives a proportionate share of capacity regardless of revenue generated by its total bid, and thus regardless of

distance. On October 25, 2000, FERC approved PG&E's filing over the protest of some of PG&E's IT customers, relying on Commission precedents accepting *pro rata* allocation and reasoning that *pro rata* allocation would eliminate the need for a complex queue and improve efficiency along the pipeline. *See PG&E Gas Transmission, Northwest Corp.*, 93 F.E.R.C. ¶ 61,-072, at 61,187, 2000 WL 1597087 (2000), *reh'g denied*, 94 F.E.R.C. ¶ 61,114, 2001 WL 112329 (2001) (*PG&E II*).[1] PG&E subsequently implemented its *pro rata* allocation mechanism, and it remains in effect today.

Meanwhile, PG&E requested rehearing of FERC's *PG&E I* ruling, claiming that FERC failed to address several Commission precedents that allowed distance-based allocation. On February 8, 2001, FERC denied PG&E's request for rehearing. *PG&E Gas Transmission, Northwest Corp.*, 94 F.E.R.C. ¶ 61,119, 2001 WL 112330 (2001) (Rehearing Order). In the Rehearing Order, FERC attempted to distinguish the cases on which PG&E relied on the grounds that the cases "do not address the issue raised here, but merely find that breaking ties at the maximum rate should be done in a nondiscriminatory manner." *Id.* at 61,451.

PG&E timely filed this petition for review.

## II. Analysis

█ Under NGA § 4, a pipeline proposing a rate change has the burden of showing that the proposed rate is just and reasonable. *Exxon Corp. v. FERC*, 206 F.3d 47, 51 (D.C.Cir.2000). If the pipeline meets that burden, "FERC approves the rate regardless of whether there may be other rates that would also be just and reasonable." *Id.* We will uphold FERC's

decision to reject a tariff filing unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2000). Under this deferential standard, "the Commission must be able to demonstrate that it has made a reasoned decision based upon substantial evidence in the record." *Northern States Power Co. v. FERC*, 30 F.3d 177, 180 (D.C.Cir.1994) (quotation omitted). In addition, the Commission must have "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (quotation omitted). PG&E's central claim is that FERC did not exercise reasoned decisionmaking when it rejected PG&E's filing. Before we reach the merits of PG&E's contention, however, we first address whether this case is properly before us.

### A. Mootness

█ FERC claims that we should dismiss this petition as moot because FERC approved, and PG&E implemented, its *pro rata* allocation proposal after FERC rejected PG&E's revenue-based proposal. Thus, FERC argues that allowing the revenue-based mechanism would not provide PG&E with any relief because the *pro rata* mechanism has already replaced the queue and performs the same capacity allocation function the revenue-based mechanism would perform. We disagree. A controversy persists over whether PG&E should be allowed to implement its preferred method of IT capacity allocation.

---

1. We address the petition for review of PG&E's customers in a companion case, *Duke Energy Trading & Mktg., L.L.C. v. FERC*, 315 F.3d 377 (D.C.Cir.2003), issued by this Court today.

Article III of the Constitution limits federal courts to resolving "actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317, 108 S.Ct. 592, 601, 98 L.Ed.2d 686 (1988). To satisfy Article III's case or controversy requirement, "a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision." *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70, 104 S.Ct. 373, 375, 78 L.Ed.2d 58 (1983). FERC does not dispute that PG&E suffered an injury when the Commission initially rejected its revenue-based mechanism. Rather, it contends that PG&E's injury has been negated by the Commission's later acceptance of a different proposal for allocation of IT capacity, and thus this Court can offer no effective relief.

While FERC is certainly correct that both the *pro rata* and revenue-based proposals replace the queue and allocate IT capacity between maximum rate bidders, the revenue-based mechanism is undisputedly PG&E's preferred allocation method. Indeed, PG&E proposed *pro rata* allocation only after FERC rejected its revenue-based proposal. Therefore, while approval of the "second-best" *pro rata* mechanism may have lessened PG&E's injury, the injury persists in that PG&E has been precluded from implementing its preferred method of allocation.

Unquestionably, a favorable ruling of this Court would redress PG&E's injury. If this Court grants PG&E's petition for review, we will remand the case to FERC for it to reconsider the revenue-based mechanism in light of this Court's opinion. If, on remand, the Commission approves the filing, PG&E will implement the revenue-based mechanism in place of the existing *pro rata* system. Thus, a favorable decision would provide PG&E with its desired relief: a fair consideration of the revenue-based mechanism, and possibly, an opportunity to implement its preferred method for allocating IT capacity.

The fact that both the existing *pro rata* mechanism and the proposed revenue-based mechanism replace the queue and perform the same function—allocating IT capacity—carries no weight in the mootness analysis. FERC has cited no authority for its proposition that merely because an agency approves a litigant's second-best option to perform a given function, the litigant may not continue to appeal the rejection of its most favored option. Our decision in *Rio Grande Pipeline Co. v. FERC*, 178 F.3d 533 (D.C.Cir.1999) is instructive. In *Rio Grande*, a pipeline company sought approval of its rates under 18 C.F.R. § 342.2(a) and submitted evidence of reasonableness of the rates. 178 F.3d at 536. Commission approval under § 342.2(a) would have protected the pipeline from paying reparations to customers if the rate was later found unreasonable. *Id.* In the alternative, the pipeline sought approval under § 342.2(b), which allowed approval if at least one pipeline customer had agreed to the rate, but required reparations if the rate was successfully protested. *Id.* FERC approved the rate under § 342.2(b), but not under the more favorable provisions of § 342.2(a). *Id.* at 537. The pipeline petitioned for review of FERC's rejection of its § 342.2(a) claim. *Id.* On appeal, FERC argued that the pipeline had suffered no injury because its rate had been approved. *Id.* at 540. We disagreed, holding that the pipeline was aggrieved because approval under § 342.2(b) was less desirable than approval under § 342.2(a), in that it subjected the pipeline to greater economic risks. *Id.* Similarly, in the present case FERC has approved one method for allocating capacity among PG&E's maximum bidders, but it is a less desirable option than PG&E's preferred method, which FERC rejected. Consequently, PG&E has been aggrieved

by FERC's ruling despite subsequent approval of the *pro rata* tiebreaker. Since this Court's ruling can remedy that injury, the case is not moot. Therefore, we reach the merits of PG&E's petition.

### B. *Merits*

██ On the merits, PG&E argues that FERC acted arbitrarily and capriciously by failing to adequately address Commission precedents that approved distance-based mechanisms for allocating transportation capacity. We agree.

In its orders below, the Commission held that PG&E's proposal violated 18 C.F.R. § 284.9(b)'s prohibition against "undue discrimination," by making it more difficult for maximum rate short-haul shippers to obtain IT capacity. *PG&E I*, 92 F.E.R.C. at 61,677. In examining the reasoning that undergirds FERC's ruling, we note that discrimination is undue only if "a pipeline's rate schedule creates a preference without a reasonable basis." *Algonquin Gas Transmission Co. v. FERC*, 948 F.2d 1305, 1316 (D.C.Cir.1991) (quotation omitted). By contrast, when differences in treatment are "based on relevant, significant facts which are explained," the disparate treatment does not run afoul of the NGA. *TransCanada Pipelines Ltd. v. FERC*, 878 F.2d 401, 413 (D.C.Cir.1989).

Throughout the course of this litigation, PG&E has consistently pointed to several cases in which FERC approved distance-based allocation methods and held that such methods did not constitute undue discrimination against short-haul shippers. In *PG&E I*, FERC utterly failed to confront these cases. In its Rehearing Order, FERC's attempt to distinguish these precedents was confusing at best, if not outright disingenuous. Finally, on review before us, FERC counsel concocted a harmonization of Commission precedent with the Commission ruling. Of course, this Court cannot consider such *post hoc* justi-fications, but may only consider the grounds on which the Commission actually relied in making its decision. *Algonquin Gas Transmission*, 948 F.2d at 1312 n. 12 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947)). We now briefly address the relevant Commission precedents and FERC's attempts to distinguish them in its orders.

In *Northern Natural Gas Co.*, 82 F.E.R.C. ¶ 61,077, 1998 WL 32696, *reh'g*, 84 F.E.R.C. ¶ 61,154, 1998 WL 765463 (1998), FERC approved the pipeline's proposal to allocate capacity based on net present value (NPV), with NPV determined in part by whether the gas was to be transported over two zones or wholly within one zone. 82 F.E.R.C. at 61,287. The Commission recognized that under the pipeline's proposal, "continuous service that includes both [Zone A] and [Zone B] should be awarded the service if they have a higher NPV that [sic] purely [Zone A] transportation at the maximum rate." *Id.* Even so, FERC approved the proposal over protests that the allocation system would unduly discriminate against single zone shippers. *Id.* Despite *Northern Natural*'s obvious relevance to the present case, FERC failed even to mention *Northern Natural* in its orders below, much less attempt to distinguish it.

Similarly, in *Tennessee Gas Pipeline Co.*, 65 F.E.R.C. ¶ 61,224, at 62,111, 1993 WL 467762 (1993), the Commission approved a zone-based system with allocation based on price, wherein price was based on the route traveled and quantity of gas transported. *Id.* Tennessee's distance-based allocation proposal applied to both maximum and sub-maximum rate bids. *Id.* Moreover, while the Commission ordered Tennessee to delete its consideration of quantity, the Commission allowed Tennessee to consider distance, specifically re-

jecting arguments that the distance-based mechanism would unduly discriminate against short-haul shippers. *Id.* In a later proceeding, the Commission again rejected an attempt to eliminate Tennessee's consideration of distance in allocating IT capacity, despite complaints that it discriminated against maximum rate short-haul shippers. *See Tennessee Gas Pipeline Co.*, 71 F.E.R.C. ¶ 61,399, at 62,582, 1995 WL 384147 (1995).

In its Rehearing Order in this proceeding, FERC misleadingly tried to distinguish *Tennessee. See* 94 F.E.R.C. at 61,452. The Commission only mentioned *Tennessee*'s holding that the pipeline had to delete any consideration of *quantity* from its allocation mechanism so as not to discriminate against small or short-haul shippers. *Id.* However, FERC completely ignored the next paragraph in *Tennessee*, in which the Commission explicitly upheld consideration of distance against charges of undue discrimination. *Tennessee*, 65 F.E.R.C. at 62,111. Thus, FERC utterly failed to distinguish the relevant holding of *Tennessee* and explain why its reasoning should not be applied to the present case.

Finally, in *Trunkline Gas Co.*, 64 F.E.R.C. ¶ 61,141, at 62,126, 1993 WL 349643 (1993), *reh'g denied in relevant part*, 65 F.E.R.C. ¶ 61,355, 1993 WL 594424 (1994), FERC again approved a zone-based system that allocated IT capacity based, in part, on number of zones traveled. The distance-based mechanism applied to both maximum and sub-maximum rate bids. *Id.* Furthermore, FERC rejected a protestor's proposal that would have allocated capacity based on percentage of maximum rate paid, regardless of distance traveled. *Id.* The Commission explicitly acknowledged that under Trunkline's filing a maximum rate short-haul shipper could be trumped by a lower rate longer-haul shipper. *Id.* Nonetheless, the Commission concluded that the proposal did not unduly discriminate against short-haul shippers and promoted allocative efficiency. *Id.* at 62,126–27.

The Commission's attempt to distinguish *Trunkline* in its Rehearing Order is confusing at best. First, FERC seems to claim that *Trunkline* applied only to below maximum rate bids. *See* Rehearing Order, 94 F.E.R.C. at 61,452. This is flatly wrong, as even FERC counsel admitted at oral argument. *See* Tr. of Oral Arg. at 28–29. Second, FERC claimed "[t]he *Trunkline* issue is different because it did not discuss allocation methodology for resolving ties when the bids are equal." Rehearing Order, 94 F.E.R.C. at 61,452. It is true that Trunkline's revenue-based proposal did not involve breaking ties between equal bidders, but neither does PG&E's proposal in any relevant sense. That is, in *Trunkline*, bids were ranked based on adding the rates for each zone traveled. Similarly, in PG&E's proposal, bids are ranked based on multiplying the per-mile rate by the number of miles traveled. The fact that PG&E's proposal breaks ties between bidders who bid the same *per-mile* rate is not a relevant difference from the proposal in *Trunkline* when, under both systems, a maximum rate short-haul shipper can always be outbid by a longer-haul shipper. Thus, the distinction to which FERC alluded between the zone-based system in *Trunkline* and the distance-based system in the PG&E tariff is a distinction without a difference.

In sum, FERC's attempts to distinguish its precedents approving distance-based allocation were alternately nonexistent, misleading, and irrelevant. On brief to this Court, counsel argues that these precedents are distinguishable because they involved zone-based systems with rates based on several factors, of which distance is only one. This contrasts,

counsel contends, with PG&E's proposal, in which distance is the sole determinant of capacity allocation at the maximum rate. Thus, PG&E's proposed allocation mechanism is unduly discriminatory while those in *Northern Natural, Tennessee,* and *Trunkline* were not. We cannot consider this argument. FERC's order "must stand or fall on the grounds articulated by the agency in that order," not the reasoning proffered by its appellate counsel. *NorAm Gas Transmission Co. v. FERC,* 148 F.3d 1158, 1165 (D.C.Cir. 1998) (quotation omitted). We therefore make no judgment about the validity of counsel's argument because it is a purely *post hoc* justification which cannot sustain the Commission's orders. *See Chenery,* 332 U.S. at 196, 67 S.Ct. at 1577.

As outlined above, FERC's orders in this case do not adequately explain why the Commission's precedent in favor of distance-based allocation does not compel approval of PG&E's filing. In "gloss[ing] over" these precedents, FERC "cross[ed] the line from the tolerably terse to the intolerably mute." *Greater Boston Television Corp. v. FCC,* 444 F.2d 841, 852 (D.C.Cir.1970). Indeed, FERC has given no explanation whatsoever for this apparent shift in Commission policy. FERC's failure to come to terms with its own precedent reflects the absence of a reasoned decisionmaking process. *See North Carolina Utils. Comm'n v. FERC,* 42 F.3d 659, 666 (D.C.Cir.1994) (rejecting a FERC order because the Commission did not "sufficiently explain[ ] its departure from its prior cases"); *Hatch v. FERC,* 654 F.2d 825, 834 (D.C.Cir.1981) ("[A]n agency must provide a reasoned explanation for any failure to adhere to its own precedents."). Consequently, we vacate FERC's orders and remand, so that FERC may reconsider PG&E's proposal in light of this opinion and Commission precedent.

## III. Conclusion

We hold that this case did not become moot when FERC approved PG&E's *pro rata* allocation proposal after it rejected PG&E's revenue-based mechanism. A live controversy persists regarding whether PG&E should be able to implement revenue-based allocation of IT capacity. On the merits, we hold that FERC failed to adequately address Commission precedent allowing pipelines to consider distance when allocating transportation capacity. Accordingly, we grant the petition for review and vacate FERC's orders and remand for further consideration in light of this opinion.

*So ordered.*