Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 15, 2004          Decided April 13, 2004

No. 03-1166

GAS TRANSMISSION NORTHWEST CORPORATION,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA,
INTERVENOR

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

*Stefan M. Krantz* argued the cause for petitioner. With him on the briefs were *Lee A. Alexander*, *C. Todd Piczak*, and *Carl M. Fink*.

*David H. Coffman*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were *Cynthia A. Marlette*, General Counsel, and *Dennis Lane*, Solicitor.

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: EDWARDS and HENDERSON, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: Gas Transmission Northwest Corporation ("GTN") is an interstate natural gas pipeline that transports gas from the United States/Canada border to the California/Oregon border. In 2002 it sought permission from the Federal Energy Regulatory Commission to amend its tariff so that it could sell available, unsubscribed capacity, or capacity expected to become available, to a shipper willing to execute an agreement for service to start at a specific future date. The Commission approved, finding GTN's so-called "prearranged deal" program "consistent with Commission policy." *PG&E Gas Transmission, Northwest Corp.*, 102 FERC ¶ 61,044 at 61,099 (2003) ("Initial Order").

GTN recognized that the Commission's normal mandate of a right of first refusal ("ROFR") for all holders of service agreements of a year or more could obstruct the program, as sale of the capacity for the period between agreement and the scheduled start of service, coupled with the ROFR, would undercut GTN's effort to make a firm commitment of the capacity in the future. See GTN's October 15, 2002 Filing ("October 2002 Filing") at 4; see generally 18 C.F.R. § 284.221(d)(2). GTN thus sought a partial waiver of the ROFR requirement, supporting its request by likening its program to a group of "capacity reservation" cases in which the Commission allowed shippers to reserve capacity for future expansion projects and waived the ROFR requirement for capacity sold in the interim. See October 2002 Filing at 3–4; see also, e.g., *Northern Border Pipeline Co.*, 103 FERC ¶ 61,390 (2003); *Columbia Gulf Transmission Co.*, 100 FERC ¶ 61,133 (2002); *Tennessee Gas Pipeline Co.*, 82 FERC ¶ 61,288 (1998).

The Commission refused GTN's request for a waiver, saying that it "disagree[d]" with GTN's argument that its prearranged deal program was akin to the capacity reservation

cases. Initial Order, 102 FERC ¶ 61,044 at 61,100. It purported to explain, saying that ROFR waiver was suitable in the latter cases "so that a general system expansion may be optimally sized." *Id.*

GTN requested rehearing, again emphasizing the similarities between its prearranged deal program and the capacity reservation cases and arguing that "granting limited waiver of the ROFR for interim shippers in this case furthers precisely the same goals as those the Commission found determinative for ... [waiving] the ROFR in the capacity reservation context." Request for Rehearing at 4. The Commission denied rehearing. *PG&E Gas Transmission, Northwest Corp.*, 103 FERC ¶ 61,061 at 61,200 (2003) ("Rehearing Order").

GTN seeks review, arguing that the Commission has failed to offer a reasoned basis for its refusal to waive the ROFR requirement. We remand so that the Commission may give a rationale, if it has one.

* * *

Although our review is under the deferential "arbitrary and capricious" standard, 5 U.S.C. § 706(2)(A), even that modest criterion requires the Commission to "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted).

As we've said, the Commission in its Initial Order tried to differentiate GTN's prearranged deal program from the capacity reservation cases by saying that the former did not insure that "a general system expansion may be optimally sized." Initial Order, 102 FERC ¶ 61,044 at 61,100; see also *Columbia Gas Transmission Corp.*, 101 FERC ¶ 61,380 at 62,586 (2002) ("The primary purpose of permitting the reservation of capacity is to minimize the size of the expansion[.]").

Not having been understood, GTN tried to connect the dots in its Request for Rehearing, explaining that its proposal,

with partial waiver of the ROFR, "will also help to ensure that future expansion projects are both necessary and properly sized. In fact, making capacity available on a pre-arranged basis may eliminate entirely the need to construct new capacity to serve the pre-arranged shipper's currently anticipated future needs." Request for Rehearing at 4. In other words, avoiding wasteful use of existing capacity obviates or reduces the need for additional, potentially wasteful construction, precisely the object of the capacity reservation program. Thus the Commission's principal answer fails to distinguish its own prior precedent. See, e.g., *PG&E Gas Transmission, Northwest Corp. v. FERC*, 315 F.3d 383, 390 (D.C. Cir. 2003).

The Commission adds nothing useful in its claim that GTN is seeking "to insulate itself from its decision to enter into a pre-arranged agreement for future service, at the expense of shippers who enter into service agreements in the interim." Initial Order, 102 FERC ¶ 61,044 at 61,100 (citing *Williams Gas Pipelines Central Inc.*, 97 FERC ¶ 61,249 (2001)). The cited decision says only that "a contractual right of first refusal may broaden the regulatory right of first refusal, but it may not narrow it." *Williams Gas*, 97 FERC ¶ 61,249 at 62,110. But that proposition has no applicability here, where GTN is seeking to alter its tariff—not to file a single nonconforming service agreement—so that the regulatory ROFR will not apply to an entire set of service agreements.

In its Rehearing Order the Commission invoked the policy concept behind its ROFR requirement—concern about a pipeline's potential exercise of market power over shippers who cannot invoke a ROFR. Rehearing Order, 103 FERC ¶ 61,061 at 61,199 (citing Order No. 637, Regulation of Short–Term Natural Gas Transportation Services, and Regulation of Interstate Natural Gas Transportation Services, 65 Fed. Reg. 10,155 (February 25, 2000)). But that plainly supplies no explanation for the Commission's more stringent insistence on the ROFR here than in the capacity reservation cases. Unless the Commission can explain why the advantages of capacity reservation are superior to those of GTN's prearranged deal program, or why the negative effects of ROFR waiver are more severe in the latter context, it cannot rest its

refusal of GTN's waiver request simply on the underlying justification for its general ROFR requirement.

If on remand the Commission can adduce a compelling distinction between the two contexts, waiver denial may well be sustainable; if not, not. In any event, we go on to an additional point. GTN argued that by refusing to waive the ROFR requirement the Commission would render GTN's prearranged deal program "virtually useless," as prearranged shippers could not be certain that interim shippers would not exercise their ROFR and prevent the prearranged shippers from acquiring the capacity for which they had contracted. Request for Rehearing at 7–8; see also *Ozark Gas Transmission Sys. v. FERC*, 897 F.2d 548, 553 (D.C. Cir. 1990) (holding that it is unreasonable for FERC to approve a program but to continue to apply policies that defeat the program).

The Commission responded that the regulatory ROFR was an existing requirement for which GTN's program must account. Rehearing Order, 103 FERC ¶ 61,061 at 61,199. This is no answer at all. As evidenced by the capacity reservation cases, the Commission will waive the ROFR requirement in certain circumstances. See, e.g., *Northern*, 103 FERC ¶ 61,390; *Columbia Gulf*, 100 FERC ¶ 61,133; *Tennessee Gas*, 82 FERC ¶ 61,288. Stating that the ROFR is an existing requirement does not answer GTN's argument that this is one of those circumstances in which it should be waived.

In its Initial Order (but curiously not in its Rehearing Order), the Commission made an observation that might be relevant to GTN's *Ozark* argument: it said that a shipper seeking capacity for future use could "insulate itself from the risk that capacity may not be available at that time . . . by purchasing capacity and releasing it until it has a use for it." Initial Order, 102 FERC ¶ 61,044 at 61,100. As a non-pipeline holder of capacity is not subject to the mandatory ROFR, this approach would reconcile longterm commitment with interim use.

An obvious difficulty with this argument is that it takes us back to the Commission's inadequate distinction of the capacity reservation cases. If purchaser responsibility is an adequate solution for the prearranged deal, why not for capacity reservation?

Perhaps there are material differences between capacity reservation and GTN's prearranged deal, so far as they affect the trade-offs between improving the chances of averting wasteful capacity construction and controlling the risks of injurious pipeline exercises of market power. But at this point the Commission has failed to identify them. "Divergence from agency precedent demands an explanation." *Hall v. McLaughlin*, 864 F.2d 868, 872 (D.C. Cir. 1989).

\* \* \*

The Board's decision is accordingly remanded.

*So ordered.*