# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

‗‗‗‗‗‗

Argued March 22, 2005          Decided June 14, 2005

No. 04-1116

FLORIDA MUNICIPAL POWER AGENCY,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

FLORIDA POWER & LIGHT COMPANY,
INTERVENOR

‗‗‗‗‗‗

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

‗‗‗‗‗‗

*Robert A. Jablon* argued the cause for petitioner. With him on the briefs were *Daniel I. Davidson* and *Peter J. Hopkins*.

*Judith A. Albert*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *Cynthia A. Marlette*, General Counsel, and *Dennis Lane*, Solicitor.

*Clifford M. Naeve*, *Glen S. Bernstein*, and *Kathryn K. Baran* were on the brief for intervenor.

Before: GINSBURG, *Chief Judge*, and EDWARDS and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* EDWARDS.

EDWARDS, *Circuit Judge*: Florida Municipal Power Agency ("FMPA"), a public agency that sells electric power supply for its member cities, petitions this court for review of two Federal Energy Regulatory Commission ("FERC" or "Commission") decisions in which the Commission declined to consider whether a network service provider can charge a network customer full load ratio prices where it is physically impossible for that provider to service the customer's full load. The case presents the latest chapter in an ongoing dispute between petitioner FMPA and intervenor Florida Power and Light Company ("Florida Power") over the cost that Florida Power may allocate to FMPA for network transmission service. In the orders under review, the Commission declined to consider the load ratio pricing issue on the ground that it had already addressed FMPA's argument in a final rule that sets out the general parameters for network transmission service.

Counsel for FERC has conceded to the court that the final rule upon which the Commission relied does *not* address the specific issue of *physical impossibility* as it relates to load ratio pricing. Moreover, it is clear that the final rule left open the possibility of exceptions to the general load ratio pricing scheme. FERC's refusal to consider whether physical incapacity provides a proper basis for an exception to full load ratio pricing is therefore arbitrary and capricious. Accordingly, we grant the petition for review and remand the case to FERC for further consideration consistent with this opinion.

## I. BACKGROUND

### A. *Regulatory Framework*

In order to facilitate competition in wholesale bulk power and bring more efficient power to consumers, FERC issued Order No. 888, requiring public utilities that own, control, or operate transmission systems to have on file open access tariffs that offer, *inter alia*, network transmission service. *See Promoting Wholesale Competition Through Open Access Non-Discriminatory Transmission Services by Public Utilities; Recovery of Stranded Costs by Public Utilities and Transmitting Utilities*, 61 Fed. Reg. 21,540, 21,541 (May 10, 1996) ("Order No. 888" or "Final Rule"), *on reh'g*, 62 Fed. Reg. 12,274 (Mar. 14, 1997) ("Order No. 888-A"), *on reh'g*, 62 Fed. Reg. 64,688 (Dec. 9, 1997), *on reh'g*, 82 F.E.R.C. ¶ 61,046 (Jan. 20, 1998), *aff'd Transmission Access Policy Study Group v. FERC*, 225 F.3d 667 (D.C. Cir. 2000) (per curiam) ("*TAPS*"), *aff'd sub nom. New York v. FERC*, 535 U.S. 1 (2002). "Network service allows more flexibility" than point-to-point service, another form of service offered under the *pro forma* tariff, "by allowing a transmission customer to use the entire transmission network to provide generation service for specified resources and specified loads without having to pay multiple charges for each resource-load pairing." Order No. 888, 61 Fed. Reg. at 21,547 n.65. Network service permits a utility company using another utility's transmission system "to fully integrate load [*i.e.*, the aggregate demand for service on the system at any given time,] and resources on an instantaneous basis in a manner similar to the transmission owner's integration of its own load and resources." *Id*. at 21,547. We recognized in *TAPS* that "network service, as the Commission defined it, means that network customers can call upon the transmission provider to supply not just some, but all of their load at any given moment, when for instance they experience blackouts or brownouts." *TAPS*, 225 F.3d at 726.

Order No. 888 endorsed the "load ratio allocation method of pricing" for network service. This method allocates the costs of network transmission based on the ratio of each customer's load to the entire load on the system. *See* Order No. 888, 61 Fed. Reg. at 21,599; *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 363 (D.C. Cir. 2003), *cert. denied,* 540 U.S. 946 (2003). The Commission "recognize[d]," however, "that alternative allocation proposals may have merit and welcome[d] their submittal." Order No. 888, 61 Fed. Reg. at 21,599. The Order made it clear that such applications would "be evaluated on a case-by-case basis and decided on their merits." *Id*.

Order No. 888-A, which addressed petitions for clarification and rehearing relating to the Final Rule, considered the concerns of some transmission customers, including FMPA, that "network customers should not be charged a network rate to use their own transmission (or distribution) system to serve loads that are located beyond the transmission owner's system," a phenomenon known as load and generation "behind-the-meter." Order No. 888-A, 62 Fed. Reg. at 12,322. FERC's analysis drew at length from the "Complaint Case," in which FMPA sought to have the Commission direct Florida Power to provide network transmission service to FMPA and its members. After granting FMPA's request for the service, FERC largely adopted Florida Power's proposed cost-allocation method, under which the costs of Florida Power's transmission system would be shared based on the "relative native loads that receive network service," *see Fla. Mun. Power Agency*, 67 F.E.R.C. ¶ 61,167, at 61,477-78, 61,481 (May 11, 1994) ("*FMPA I*"), *reh'g granted in part*, 74 F.E.R.C. ¶ 61,006 (Jan. 5, 1996) ("*FMPA II*"), *reh'g denied*, 96 F.E.R.C. ¶ 61,130 (July 26, 2001), *aff'd on other grounds*, 315 F.3d 362, the load ratio pricing method subsequently adopted in Order No. 888 and clarified in Order No. 888-A. Order No. 888-A echoed and amplified *FMPA I* and *FMPA II,* explaining that a customer may exclude "the *entirety* of a discrete load" from its network load (and obtain

point-to-point service as necessary for that load), but it cannot exclude merely part of that discrete load, even if that part is served by behind-the-meter generation. Order No. 888-A, 62 Fed. Reg. at 12,323.

## B. *Prior Proceedings in the Present Case*

In 1993, Florida Power filed an "extensive and comprehensive rate filing designed to overhaul [Florida Power's] existing tariff structure." *Fla. Power & Light Co.*, 64 F.E.R.C. ¶ 61,361, at 63,480 (Sept. 24, 1993). This rate filing marked the beginning of the "Rate Case," a FERC proceeding that is docketed separately from the Complaint Case. Numerous parties, including FMPA (as a member of "Florida Cities") intervened in the Rate Case. The Commission accepted and suspended Florida Power's rate filing and set most issues for hearing before an Administrative Law Judge ("ALJ"), who subsequently issued a lengthy initial decision on December 13, 1995. *See Fla. Power & Light Co.*, 73 F.E.R.C. ¶ 63,018 (Dec. 13, 1995).

On April 17, 2000, Florida Power filed a settlement agreement that proposed to resolve issues pertaining to its cost-of-service, with the exception of three "FMPA Reserved Issues." The settlement was approved in *Florida Power & Light Co.*, 92 F.E.R.C. ¶ 61,241 (Sept. 18, 2000). One of the reserved issues was "treatment of behind-the-meter generation and associated load." Fla. Power & Light Co., Settlement Agreement at 6, *reprinted in* Joint Appendix ("J.A.") 55, 57. On June 30, 2003, FMPA filed a motion requesting that FERC direct it and Florida Power to file further pleadings on the reserved issues.

The challenged portions of the decisions under review relate to the Commission's disposition of the behind-the-meter generation and associated load reserved issue. The Commission declined to consider the issue on the ground that FMPA had

raised its present concerns in the Order Nos. 888 and 888-A proceedings and the issue of load ratio pricing for network service had been resolved by FERC in those orders. *See Fla. Power & Light Co.*, 105 F.E.R.C. ¶ 61,287, at 62,409-10 (Dec. 16, 2003).

FMPA "accept[ed] that network transmission pricing allocations . . . should be based upon . . . customers' full load," but sought rehearing on "a very discrete aspect" of the load ratio pricing issue – *i.e.*, "whether FMPA should be charged by [Florida Power] for network transmission integration service to serve load where [Florida Power] cannot provide the service because of physical transmission limitations." FMPA Req. for Reh'g at 4, *reprinted in* J.A. 262, 265 (emphasis omitted). FMPA's principal argument was that it cannot be charged for service that Florida Power cannot provide because of physical transmission limitations. FMPA contended that such charges would be inconsistent with the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (2000), and the Federal Power Act, 16 U.S.C. §§ 824d-824e (2000). To highlight its concerns, FMPA cited its member city, Key West, which sits approximately 120 miles from Florida Power's interconnection point. The intervening transmission system that connects Key West to Florida Power does not have the physical capacity to serve Key West's full peak load. According to FMPA, it is therefore physically impossible for Florida Power to provide network service for the entirety of that load. *See* Req. for Reh'g at 5-7, J.A. 266-68.

The Commission denied the request for rehearing, stating:

We disagree with FMPA's premise that the transmission pricing guidance contained in Order Nos. 888 and 888-A is only generic in nature and did not address the application of load ratio pricing to the circumstances raised here by FMPA; Order No. 888-A clearly addressed the circumstances cited by FMPA and states that the "bottom

line is that *all* potential transmission customers, including those with generation behind the meter, must choose between network integration transmission service or point-to-point transmission service. Each of these services has its own advantages and risks."

*Fla. Power & Light Co.*, 106 F.E.R.C. ¶ 61,204, at 61,696-97 (Mar. 3, 2004) (quoting Order No. 888-A, 62 Fed. Reg. at 12,323).

Notwithstanding FERC's decision suggesting otherwise, it is undisputed here that Order No. 888-A did not address whether physical impossibility warrants an exception to the general rule against permitting partial load ratio pricing for network customers. FMPA petitions this court for review of that discrete issue.

## II. ANALYSIS

We review FERC's orders under the arbitrary and capricious standard and uphold the Commission's factual findings if supported by substantial evidence. *See Fla. Mun. Power Agency v. FERC*, 315 F.3d at 365. We "may uphold agency orders based only on reasoning that is fairly stated by the agency in the order under review, *see SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943); '*post hoc* rationalizations by agency counsel will not suffice,' *Western Union Corp. v. FCC*, 856 F.2d 315, 318 (D.C. Cir. 1988)." *Williams Gas Processing - Gulf Coast Co., L.P. v. FERC*, 373 F.3d 1335, 1345 (D.C. Cir. 2004). Applying this standard, we hold that FERC's refusal to consider whether physical incapacity provides a proper basis for an exception to full load ratio pricing does not withstand review.

FERC refused to address the discrete issue of physical impossibility, highlighted in FMPA's request for rehearing, *see* FMPA Req. for Reh'g at 4-5, J.A. 265-66, on the ground that "Order No. 888-A clearly addressed the circumstances cited by FMPA." *Florida Power*, 106 F.E.R.C. at 61,696-97. Because

the record clearly shows that FERC has *not* specifically addressed the issue of physical impossibility, the agency's rationale is unreasonable. To be sure, FERC considered myriad permutations of the behind-the-meter generation issue in Order No. 888-A. As counsel for FERC acknowledged at the oral argument, however, FERC has never expressly addressed FMPA's request for an impossibility exception. *See* Recording of Oral Argument at 45:15-:30.

Order No. 888, moreover, explicitly left open the possibility of such exceptions by stating that FERC would continue to consider alternative proposals for allocating the cost of network integration and would evaluate those alternatives on the merits on a case-by-case basis. *See* Order No. 888, 61 Fed. Reg. at 21,599. And this court contemplated the availability of such exceptions in affirming the Final Rule. *See TAPS*, 225 F.3d at 689 ("FERC . . . recognized that its generic findings may have exceptions, and thus that Order 888 may in individual circumstances have a different result than that intended.").

Petitioner seeks such an exception – alternative cost allocation in the case of physical incapacity. A petitioner seeking review of an agency's failure to grant a waiver of a general rule must show that the agency acted arbitrarily by failing to give "meaningful consideration" to the application for waiver. *United Gas Pipe Line Co. v. FERC*, 707 F.2d 1507, 1511 (D.C. Cir. 1983). FMPA has easily met this standard of review in this case, because it is undisputed that the Commission declined to address FMPA's request for an impossibility exception. *See Gas Transmission Northwest Corp. v. FERC*, 363 F.3d 500, 503 (D.C. Cir. 2004) ("Stating that [something] is an existing requirement does not answer [the] argument that this is one of those circumstances in which it should be waived.").

Simply put, FERC has failed to explain why network customers should be charged by the transmission provider for

network service that the provider is physically constrained from offering and, relatedly, why physical impossibility should not be recognized as an exception to the general rule against permitting partial load ratio pricing for network customers. We therefore remand this discrete issue to the Commission. We emphasize, however, the narrow contours of our ruling: FMPA has conceded that it must pay for full capacity regardless of whether it intends to use that full capacity. *See* Pet'r Br. at 11-12, 23; Recording of Oral Argument at 12:53-13:21. Because we find that FERC erred in failing to consider the appropriateness of an exception to Order No. 888's general provisions, we do not reach FMPA's statutory argument, *i.e.*, that such a charge for service that cannot be provided is not just and reasonable under the Federal Power Act, 16 U.S.C. §§ 824d-824e. In granting the petition for review, moreover, we do not define physical impossibility or consider whether the record in this case presents such incapacity. If these questions are pertinent at this juncture, we leave them to the Commission to consider in the first instance.

## III. CONCLUSION

We hereby grant the petition for review and remand the case for further proceedings consistent with this opinion.

*So ordered*.