Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued May 10, 2004         Decided July 13, 2004

No. 03-1179

WILLIAMS GAS PROCESSING – GULF COAST COMPANY, L.P., ET AL.,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

SHELL OFFSHORE INC., ET AL.,
INTERVENORS

————

Consolidated with
03-1199, 03-1201

————

On Petitions for Review of Orders of the
Federal Energy Regulatory Commission

————

*James T. McManus* argued the cause for petitioners. With him on the briefs were *Craig R. Rich*, *Mari M. Ramsey*, *David A. Glenn*, and *Gregory Grady*.

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*David H. Coffman*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were *Cynthia A. Marlette*, General Counsel, and *Dennis Lane*, Solicitor.

*Thomas J. Eastment* argued the cause for producer intervenors. With him on the brief were *Charles J. McClees, Jr.*, *James M. Costan*, *T. Alana Deere*, *Douglas W. Rasch,* and *Stephen L. Teichler*.

Before: GINSBURG, *Chief Judge*, and SENTELLE and ROBERTS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROBERTS.

ROBERTS, *Circuit Judge*:

I.

The Natural Gas Act (NGA), 15 U.S.C. §§ 717–717w, grants FERC jurisdiction over rates charged by any "natural-gas company for or in connection with the transportation or sale of natural gas." *Id.* § 717c(a). A "natural-gas company," in turn, includes any firm "engaged in the transportation of natural gas in interstate commerce." *Id.* § 717a(6). The "gathering" of gas — "generally defined as the process of taking natural gas from the wells and moving it to a collection point for further movement through a pipeline's principal transmission system," *Williams Gas Processing – Gulf Coast Co., L.P. v. FERC*, 331 F.3d 1011, 1013 (D.C. Cir. 2003) (internal quotation marks omitted) — is explicitly excluded, however, from FERC's jurisdiction. *See* 15 U.S.C. § 717(b) ("this chapter . . . shall not apply to . . . the production or gathering of natural gas"). Notwithstanding that jurisdictional limitation, FERC historically exercised jurisdiction over gathering services provided directly by interstate pipelines on the theory that such gathering services are provided "in connection with" the interstate transportation of gas. *See, e.g., Northern Natural Gas Co.*, 43 FERC ¶ 61,473

(1988), *reh'g denied*, 44 FERC ¶ 61,384 (1988) (citing 15 U.S.C. §§ 717c, 717d); *see also Conoco Inc. v. FERC*, 90 F.3d 536, 540 (D.C. Cir. 1996). FERC, however, has never claimed jurisdiction over stand-alone gathering entities, *i.e.*, gathering facilities that are neither owned by nor affiliated with a pipeline within FERC's jurisdiction.

In response to this regulatory environment, several jurisdictional pipelines that provided gathering services sought either to "spin off" their gathering facilities as unrelated corporations or to "spin down" the gathering operations to corporate affiliates by transferring ownership of the gathering facilities from the pipeline to a subsidiary. While a gathering service spun *off* from a jurisdictional pipeline into a separate corporation was clearly beyond FERC's NGA jurisdiction, the jurisdictional status of gatherers spun *down* from an interstate pipeline was less clear. FERC had claimed that it retained "in connection with" jurisdiction over the rates charged by spun-down gatherers. *See Natural Gas Gathering Services Performed by Interstate Pipelines and Interstate Pipeline Affiliates — Issues Related to Rates and Terms and Conditions of Service*, 65 FERC ¶ 61,136, 61,689–90 (1993) (citing *Northwest Pipeline Corp.*, 59 FERC ¶ 61,115, 61,436–37 (1992)). But FERC never found occasion to exercise its authority over such an entity. In fact, when the gathering affiliate in *Northwest Pipeline* challenged FERC's statutory authority for such jurisdiction in the court of appeals, "[t]he Commission represented . . . that its orders neither assert[ed] jurisdiction nor impl[ied] that it ha[d] jurisdiction over [the gathering affiliate] at the present time." *Williams Gas Processing Co. v. FERC*, 17 F.3d 1320, 1322 (10th Cir. 1994). The Tenth Circuit therefore dismissed the petition for review for lack of a case or controversy. *See id.*

The Commission sought to resolve the jurisdictional status of spun-down gathering entities in *Arkla Gathering Services Company*, 67 FERC ¶ 61,257 (1994). FERC there reviewed a jurisdictional pipeline's proposal to spin down its gathering facilities to an affiliate and various objections to that application. The Commission concluded that, as a general matter, it lacked jurisdiction over "companies that perform only a gath-

ering function"; "whether they are independent or affiliated with an interstate pipeline," such gathering entities "are not natural gas companies" under the NGA. *Id.* at 61,871. The Commission, though, found it hard to let go: FERC still maintained that it could, "in particular circumstances," reassert jurisdiction over a jurisdictional pipeline's gathering affiliate "where such action is necessary to accomplish the Commission's policies for the transportation of natural gas in interstate commerce." *Id.* The Commission warned that "if an affiliated gatherer acts in concert with its pipeline affiliate . . . and in a manner that frustrates the Commission's effective regulation of the interstate pipeline," the Commission would set aside "the separate corporate structures and treat the pipeline . . . as it would if the gathering facilities were owned directly by an interstate pipeline." *Id.*

The Commission went on to explain, however, that only certain "types of affiliate abuses" — those "arising specifically from the interrelationship between the pipeline and its affiliate" — would "trigger the Commission's authority to disregard the corporate form" and permit it to assert jurisdiction over a spun-down gathering affiliate. *Id.* Such abuses included "the affiliate's giving preferences to market affiliate gas or tying gathering service to the pipeline's jurisdictional transmission service; the pipeline's giving transportation discounts only to those utilizing the affiliate's gathering service; and actions resulting in cross-subsidization between the affiliate's gathering rates and the pipeline's transmission rates." *Id.* While the Commission acknowledged that "an affiliate could undertake other types of anti-competitive activities," the Commission viewed its residual jurisdiction as reaching only scenarios "where the abuse is directly related to the affiliate's unique relationship with an interstate pipeline." *Id.* Only that brand of anti-competitive behavior breached "the arm's length relationship between the pipeline and an affiliated gathering company" and thereby authorized the Commission to treat a jurisdictional pipeline and its gathering affiliate "together as a single 'natural gas company'" subject to FERC jurisdiction. *Id.*

We affirmed FERC's approval of the spin-down of the Arkla gathering facilities. *See Conoco*, 90 F.3d at 544–50. Specifically, we rejected the objections of various gas producers to the Commission's determination that it generally lacked NGA jurisdiction over gathering affiliates. *Id.* at 544–49. We also approved — "[a]s an abstract matter" — the Commission's new policy concerning NGA gathering affiliates, stating "we have no reason to doubt the Commission's conclusion that a nonjurisdictional entity could act in a manner that would change its status by enabling an affiliated interstate pipeline to manipulate access and costs of gathering." *Id.* at 549. We explicitly acknowledged, however, that the question had not yet been squarely presented for resolution "because the Commission has yet to assert its jurisdiction over a gathering affiliate." *Id.* That time has now come.

## II.

Transcontinental Gas Pipe Line Corporation (Transco) is a FERC-regulated natural gas transportation company that operates approximately 10,500 miles of natural gas pipeline extending from the Gulf of Mexico to New York. In November 2000, Transco sought permission from FERC to spin down its gathering facilities in the Gulf of Mexico located offshore of North Padre Island, Texas to its gathering affiliate Williams Gas Processing – Gulf Coast Company, L.P. (WGP).[1] The North Padre Island (NPI) gathering facilities consist of two small offshore legs — 3.83 miles of 10-inch pipeline and 18.79 miles of 20-inch pipeline — both of which gather and move gas before converging offshore and connecting to Transco's separate 24-inch pipeline that provides IT-feeder service[2] to an onshore processing facility and eventually to Transco's main pipeline in Texas.

---

[1] Both Transco and WGP are wholly owned by The Williams Companies, Inc., a publicly-traded corporation.

[2] This IT-feeder service is an interruptible gas transportation service that has higher priority than Transco's other interruptible service. *See Exxon Mobil Corp. v. FERC*, 315 F.3d 306, 308 (D.C. Cir. 2003).

FERC approved the spin-down of the NPI gathering facilities to WGP over the objections of numerous producers and shippers, including Shell Offshore Inc., an intervenor in this proceeding. *See Transcontinental Gas Pipe Line Corp.*, 96 FERC ¶ 61,115, 61,433, 61,442 (2001) (*Spin-Down Order*), *aff'd*, *Williams Gas Processing – Gulf Coast Co.*, 331 F.3d at 1020–23. Moreover, as WGP engaged only in gathering and other nonjurisdictional activities, the Commission concluded that once ownership of the NPI facilities was transferred from Transco to WGP, those facilities would become exempt from FERC's NGA jurisdiction. *Spin-Down Order*, 96 FERC at 61,442. The Commission, however, noted on several occasions that, as the NPI gathering facilities were located offshore, they would remain subject to FERC's jurisdiction under the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. §§ 1331–1356, and OCSLA's requirement that service be provided on an open access and nondiscriminatory basis, *id.* § 1334(f)(1)(A). *Spin-Down Order*, 96 FERC at 61,435–37. Transco closed the spin-down of the NPI gathering facilities to WGP on December 1, 2001, and those facilities are now operated by Williams Field Services (WFS), a wholly-owned subsidiary of WGP.

Intervenor Shell Offshore Inc. (Shell) produced gas offshore of North Padre Island, Texas and delivered its gas into the NPI 20-inch gathering pipeline at an interconnection 3.08 miles from that pipe's interconnection to Transco's 24-inch IT-feeder line. Prior to the spin-down of the NPI facilities, Transco charged Shell $0.08 per dekatherm to gather and transport Shell's gas 230 miles from Shell's NPI interconnection to Transco's main line. After the spin-down, WFS informed Shell that it intended to charge Shell $0.12 per dekatherm to gather and move Shell's gas just the 3.08 miles from Shell's NPI interconnection to Transco's 24-inch IT-feeder line. For its part, Transco proposed to maintain its transportation rate of $0.08 per dekatherm for the remaining 227 miles of IT-feeder service. Shell was thus being asked to pay $0.20 per dekatherm to move its gas to Transco's main line, whereas before the spin-down it had paid $0.08 per dekatherm for the same 230-mile haul.

Unable to reach an agreement with WFS on an appropriate gathering charge, on November 30, 2001, Shell filed a complaint with the Commission against Transco, WGP, and WFS, and shortly thereafter shut in its gas. *See Shell Offshore Inc. v. Transcontinental Gas Pipe Line Corp.*, Docket No. RP02-99-000, Complaint Requesting Fast Track Processing and Request for Interim Relief (Nov. 30, 2001). The complaint alleged that Transco and WFS were unlawfully leveraging their dominance in the North Padre Island gathering and transportation markets in an effort to force Shell to pay unjust and unreasonable gathering rates and to accept anticompetitive terms and conditions of gathering service, such as promising to dedicate its North Padre gas reserves to WFS gathering for the life of production. *Id.* at 3. The complaint urged the Commission to find that Transco and WFS were acting in concert and in an anti-competitive manner that frustrated the Commission's ability to regulate Transco's jurisdictional pipeline, and further requested that FERC reassert jurisdiction over the NPI gathering facilities pursuant to its *Arkla Gathering* theory of residual jurisdiction. *Id.* at 13-21.

Shortly thereafter, Superior Natural Gas (Superior), a marketer, and Walter Oil & Gas (Walter), a producer, filed their own complaint against WGP and WFS, alleging violations of OCLSA. *See Superior Natural Gas Corp. v. Williams Gas Processing – Gulf Coast Co., L.P.*, Docket No. RP02-144-000, Complaint of Superior Natural Gas Corporation and Walter Oil & Gas Corporation (Jan. 15, 2002). Specifically, Superior and Walter alleged that WFS was "imposing anticompetitive and discriminatory rates and terms and conditions for gathering service," *id.* at 2, in violation of OCSLA's requirement of "open and nondiscriminatory access." 43 U.S.C. § 1334(f)(1)(A).

WFS attempted to reach a settlement with Shell, offering to provide gathering service for $0.08 per dekatherm. Shell countered with an offer of $0.019 per dekatherm, which WFS rejected. With the parties at loggerheads, the dispute was thrown to the Commission for resolution. The Commission set both the Shell and the Superior/Walter complaints for

expedited hearing before an administrative law judge. *See Shell Offshore Inc. v. Transcontinental Gas Pipe Line Corp.*, 98 FERC ¶ 61,253 (2002). In doing so, the Commission reaffirmed its ability to reassert jurisdiction over spun-down gathering affiliates whenever "an affiliated gatherer acts in concert with its pipeline affiliate in connection with the transportation of gas in interstate commerce and in a manner that frustrates the Commission's effective regulation of the interstate pipeline." *Id.* at 62,017 (quoting *Arkla Gathering Servs.*, 67 FERC at 61,871). The Commission directed the ALJ to develop a record on that issue and also on whether WFS violated OCSLA's open access and nondiscrimination provision. *Id.* at 62,017–18.

The hearing before the ALJ commenced in April 2002. Within three days, WFS had reached a settlement with Superior and Walter disposing of their OCSLA complaint. *See Shell Offshore Inc. v. Transcontinental Gas Pipe Line Corp.*, 99 FERC ¶ 63,034, 65,231 (2002). Superior and Walter accordingly withdrew their pre-filed testimony and did not participate further in the hearing. *Id.* at 65,231–32. Shell, though, carried on, and in June 2002 the ALJ ruled in Shell's favor, concluding that Transco and WFS "in fact have acted in concert in offering gathering services and have abused their monopoly market power in a manner that frustrates the Commission's effective regulation of Transco and the interstate transportation of natural gas from the North Padre Island (NPI) system." *Id.* at 65,230; *see also id.* at 65,239–59. Consistent with the Commission's instructions, the ALJ left it for the Commission to decide whether or not to reassert NGA jurisdiction over the NPI gathering facilities. *Id.* at 65,260.

The Commission affirmed the ALJ's factual findings, concluding that the ALJ's analysis was "generally well-reasoned and provide[d] a sound basis for reasserting NGA jurisdiction over the . . . spundown NPI gathering facilities." *See Shell Offshore Inc. v. Transcontinental Gas Pipe Line Corp.*, 100 FERC ¶ 61,254, 61,912 (2002) (*Order*). The Commission applied the two-part test set forth in *Arkla Gathering*, though it did so in a manner that "diverge[d] slightly from the ALJ."

*Id.* at 61,913. As to the first part — whether Transco and WFS had acted in concert — the Commission adopted the ALJ's finding that they had. *Id.* To address the second half of the test — whether the concerted action frustrated the Commission's effective regulation of Transco — the Commission first made a predicate finding: Because Transco's and WFS's actions were "conducted on a concerted basis, the actions of WFS can be attributed to Transco, and *vice versa*, as if the facilities were still part of the Transco system." *Id.* The Commission therefore reframed the second question, asking "whether the rates and terms and conditions of service exacted directly by WFS, and indirectly by Transco, for the subject gathering services, are unjust and unreasonable or unduly discriminatory. . . ." *Id.* The answer was yes, and the Commission thus concluded that "[b]y demanding a monopolistically egregious rate in conjunction with anti-competitive terms and conditions of service, . . . the single entity, Transco/WFS, frustrated the Commission's regulation over the rates and services provided on Transco." *Id.* at 61,914. Based on these findings, the Commission reasserted NGA jurisdiction over the NPI gathering facilities and established $0.0169 per dekatherm as a just and reasonable unbundled gathering rate for Shell. *Id.* at 61,915.

Even though WFS had settled the Superior/Walter complaint and the ALJ neither accepted evidence nor reached any conclusion as to whether WFS's actions violated OCSLA, the Commission nevertheless addressed Superior's and Walter's OCSLA claim. The Commission's analysis was curt, concluding that "[i]n light of our findings that Transco and WFS, in concert, have abused their monopoly power," Transco had violated the open access and nondiscrimination requirements of OCLSA. *See id.* at 61,914–15. The Commission thus "also assert[ed] OCSLA jurisdiction over the rates and services provided by Transco/WFS." *Id.* at 61,915.

On rehearing, Transco and WFS argued, *inter alia*, that the Commission lacked any authority under the NGA to assert jurisdiction over an affiliated gatherer, misapplied its *Arkla Gathering* test, erred in finding a violation of OCSLA, and erred in setting a cost-based rate as a remedy. *See Shell*

*Offshore Inc. v. Transcontinental Gas Pipe Line Corp.*, 103 FERC ¶ 61,177, 61,661 (2003) (*Order on Rehearing*). Calling the NPI spin-down "a sham" "designed to circumvent the Commission's regulation," the Commission denied rehearing, affirming its previous order in all respects. *Id.* at 61,662, 61,663–71.

WGP now seeks review in this court, raising substantially the same arguments as in its petition for rehearing before the Commission. We vacate the Commission's *Order* and *Order on Rehearing* and remand for further proceedings.

## III.

We review orders of the Commission under the standards of the Administrative Procedure Act, upsetting agency action only when it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under this standard, while we will defer to an agency's reasonable application of its own precedents, *see, e.g., Vernal Enters., Inc. v. FCC*, 355 F.3d 650, 658 (D.C. Cir. 2004), we will not countenance an agency's departure from its precedent without explanation, *see, e.g., Ramaprakash v. FAA*, 346 F.3d 1121, 1124 (D.C. Cir. 2003). Under the NGA, the Commission's factual findings will be upheld so long as they are supported by substantial evidence. *See* 15 U.S.C. § 717r(b).

In this case, the Commission posited two statutory bases for reasserting jurisdiction over the NPI gathering facilities and setting a cost-based gathering rate — the NGA and OCSLA. We address each in turn.

### A. *NGA Jurisdiction*

As discussed above, the NGA expressly disclaims jurisdiction over gas gathering. *See* 15 U.S.C. § 717(b). Where, however, the gathering entity is a corporate affiliate of a jurisdictional pipeline, the Commission, in its *Arkla Gathering* order, reserved the right to reassert jurisdiction over the gathering affiliate "in particular circumstances" pursuant to its "in connection with" jurisdiction under Sections 4 and 5 of

the Act, *id.* §§ 717c, 717d. 67 FERC at 61,871. In fleshing out the "particular circumstances" that might give rise to a reclamation of jurisdiction, the *Arkla Gathering* decision established a two-part test: (1) concerted action between the jurisdictional pipeline and its gathering affiliate, (2) undertaken in a manner that frustrates the Commission's ability to regulate the jurisdictional pipeline. *Id.*

But the *Arkla Gathering* decision did not end there. The Commission went on to elaborate that its ability to reassert jurisdiction was "limited to" abuses "directly related to the affiliate's unique relationship with an interstate pipeline," such as "tying gathering service to the pipeline's jurisdictional transmission service" or "cross-subsidization between the affiliate's gathering rates and the pipeline's transmission rates." *Id.* Only those types of activities — where the affiliate is leveraging its relationship with the pipeline to enhance its market power — would "trigger the Commission's authority to disregard the corporate form" and treat the pipeline and its affiliate as a single entity. *Id.*

The allegedly anti-competitive actions undertaken by WFS against Shell fall outside this category. Shell lays two main charges: that WFS (1) charged an exorbitant gathering rate; and (2) attached anti-competitive conditions to its gathering service, including that Shell commit all its remaining reserves to be gathered by WFS. WFS could do these things for one reason only — because it was a recently deregulated monopolist in the North Padre gathering market. The fact that WFS is an affiliate of Transco is utterly irrelevant to its ability to charge high rates, or to impose onerous conditions for gathering service. This irrelevance is demonstrated by the fact that WFS, as a deregulated monopolist, could have (and likely would have) undertaken the same course of conduct had Transco been owned by someone else entirely. The fact that WFS had an affiliate relationship with Transco neither enhanced nor detracted from its ability to charge high rates or impose onerous conditions.

In this respect, WFS's conduct is quite different from the tying or cross-subsidization examples in *Arkla Gathering*. A

tying arrangement — conditioning the sale of a good or service on the purchase of another different (or tied) good or service, *see Eastman Kodak Co. v. Image Technical Servs.*, 504 U.S. 451, 461 (1992) — creates a relationship between the tied products. If the tie is the result of the affiliation between two firms, with each firm producing one of the underlying goods, then it is that relationship that gives rise to the market-distorting competitive advantage of the tied product. So too in a cross-subsidization scenario. Cross-subsidization occurs when a carrier attributes costs from its unregulated services to its regulated services, resulting in an inflated cost-based rate for the regulated service. Customers of the regulated monopoly thus bear part of the costs of — *i.e.*, they subsidize — the unregulated service. *See Computer & Communications Indus. Ass'n v. FCC*, 693 F.2d 198, 205 n.25 (D.C. Cir. 1982). The competitive advantage for the subsidized unregulated service depends on its relationship with the regulated service.

WFS, though — unlike a participant in a tying or cross-subsidization scheme — is able to engage in its allegedly anti-competitive conduct even in the absence of its affiliate relationship with Transco. Thus because WFS's actions do not "aris[e] specifically from the interrelationship between [Transco] and [WFS]," they are not among the types of "affiliate abuses which would trigger the Commission's authority to disregard the corporate form" and to reassert jurisdiction. *Arkla Gathering Servs.*, 67 FERC at 61,871.

Moreover, the Commission misapplied its two-part *Arkla Gathering* test. The point of the *Arkla Gathering* test is to identify the limited scenarios when the Commission "may look through, or disregard, the separate corporate structures and treat the pipeline and gatherer as a single entity." *Id.* Only when the Commission finds both concerted action between a jurisdictional pipeline and its gathering affiliate and that the concerted action frustrates the Commission's effective regulation of the pipeline, may it then pierce the corporate veil and treat the legally distinct entities as one. *Id.*

Here, however, the Commission found the requisite frustration of regulation by piercing WFS's corporate veil one step earlier in the *Arkla Gathering* analysis. After finding concerted action between WFS and Transco, but before addressing the second part of the *Arkla Gathering* test, the Commission jumped to the conclusion, reasoning that "[b]ecause their actions have been found to have been conducted on a concerted basis, the actions of WFS can be attributed to Transco, and *vice versa*, as if the facilities were still part of the Transco system." *Order*, 100 FERC at 61,913. By conflating WFS and Transco into a single unit — in FERC's words "the Transco/WFS monopoly," *id.* at 61,914 — the Commission could thus attribute the gatherer's alleged malfeasance to the pipeline, and apply the pipeline's regulatory requirements to the gatherer. This absolved the Commission of the burden of showing that the concerted action frustrated the Commission's ability to regulate the *pipeline*. If WFS is Transco, and Transco is subject to just and reasonable rate regulation, then WFS's (Transco's) price hikes frustrate FERC's ability to maintain just and reasonable rates on Transco (which includes WFS).

This line of reasoning founders as it adopts as its first premise (WFS is Transco) the *Arkla Gathering* test's ultimate conclusion — that the corporate form may be set aside. This is a plainly unreasonable application of the Commission's *Arkla* decision. Therefore we must set aside the Commission's orders reasserting NGA jurisdiction over the NPI gathering facilities as arbitrary and capricious. Because our conclusion is based on deficiencies in the Commission's orders, we need not today confront WGP's broader statutory argument that NGA does not ever permit the Commission to assert jurisdiction over gas gatherers, including those affiliated with jurisdictional pipelines. We express no opinion on that question, leaving it for another day.

B. *OCSLA Jurisdiction*

The Commission also concluded that it had jurisdiction under OCSLA to regulate the NPI gathering facilities and that WFS's violations of that statute's open access and non-

discrimination requirements, *see* 43 U.S.C. § 1334(f)(1)(A), provided an alternative justification for the remedies set out in the Order. *See Order*, 100 FERC at 61,914–15; *see also Order on Rehearing*, 103 FERC at 61,668–69. Ordinarily, we do not entertain direct appeals from the orders of the Commission undertaken pursuant to OCSLA authority; OCSLA gives the district courts first crack at judicial review. 43 U.S.C. § 1349(b)(1). Where, however, "an agency order arising from a common factual background and addressing a common question of law relies on two statutory bases that give rise to separate paths for judicial review," we have held that, notwithstanding OCSLA's grant of jurisdiction to the district courts, "the entire order should be reviewed in a comprehensive and coherent fashion, and that review should take place in the court of appeals." *Shell Oil Co. v. FERC*, 47 F.3d 1186, 1195 (D.C. Cir. 1995); *see also id.* at 1195 n.19. So here.

WFS, relying on our recent decision in *The Williams Companies v. FERC*, 345 F.3d 910 (D.C. Cir. 2003), contends that FERC's orders exceed its authority under OCSLA. We agree.

In *The Williams Companies*, we held that FERC regulations requiring OCS operators to file certain information concerning their pricing and service structures exceeded the authority granted to the Commission under Section 5(f) of OCSLA, 43 U.S.C. § 1334(f). 345 F.3d at 914–16. We examined the language of the statute and observed that the text does not "provide FERC with a general power to enforce OCSLA's open access provisions," but rather "merely assign[s] it a few well-defined tasks." *Id.* at 914, 916. Subsection 5(f)(1)(A) mandates only that "every *permit*, *license*, . . . or other *grant of authority* for the transportation by pipeline on or across the outer Continental Shelf of oil or gas shall require" the firms in question to provide "open and nondiscriminatory access." 43 U.S.C. § 1334(f)(1), (f)(1)(A) (emphases added). The Commission, in its capacity as a licensor under the NGA, thus is required to impose the OCSLA-mandated conditions in its licenses for OCS operations and has authority to enforce those conditions. *See The Williams*

*Cos.*, 345 F.3d at 914. Finding no statutory basis, however, for "general powers to create and enforce open access rules on the OCS," we affirmed the district court's vacatur of the rules. *Id.* at 916.

*The Williams Companies* would seem to doom both the Commission's assertion of broad authority to enforce open access and nondiscrimination principles on the OCS and its OCSLA-based reclamation of jurisdiction over the rates charged by WFS. *See Order*, 100 FERC at 61,914–15; *Order on Rehearing*, 103 FERC at 61,668–69. The Commission, though, raises two arguments in an effort to distinguish that decision. Both are unconvincing.

First, FERC argues that our decision in *The Williams Companies* was limited to rulemakings and does not extend to "adjudicatory matters between parties." FERC Br. 55. While it is true that *The Williams Companies* resolved a challenge to FERC regulations, its rationale was not limited to that context. Indeed, we concluded that the text of Section 5(f)(1) of OCSLA *unambiguously* constrained FERC's authority to its role as "licensor" and did not grant the Commission "a general power to enforce OCSLA's open access provisions." 345 F.3d at 914. Nothing in our opinion supports the Commission's proposed distinction between rulemakings and adjudications. Whether the Commission acts in a rulemaking or adjudicatory capacity, its authority under OCSLA is limited by the plain language of the statute to that of a licensor.

The Commission alternatively argues that it was enforcing the open access and nondiscrimination conditions in an OCSLA license — *Transco's* tariff. WFS, the Commission contends, became subject to Transco's conditions when it acted in concert with Transco to frustrate the Commission's regulation of the pipeline. *See* FERC Br. 56–57. Even if Transco's NGA tariff sufficed as a "permit, license, . . . or other grant of authority" under Section 5(f)(1) of OCSLA, and even if we had not already rejected the Commission's application of its *Arkla Gathering* test to extend NGA jurisdiction to WFS, we could not sustain the Commission's assertion of OCSLA jurisdiction on this basis, for it is nowhere present in

either the *Order* or the *Order on Rehearing*. It is axiomatic that we may uphold agency orders based only on reasoning that is fairly stated by the agency in the order under review, *see SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943); *"post hoc* rationalizations by agency counsel will not suffice," *Western Union Corp. v. FCC*, 856 F.2d 315, 318 (D.C. Cir. 1988).

\* \* \*

The petition for review is granted. The *Order* and the *Order on Rehearing* are vacated and the case is remanded to the Commission for proceedings not inconsistent with this opinion.