# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued April 15, 2008        Decided July 18, 2008

No. 07-1015

WASHINGTON GAS LIGHT COMPANY,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

DOMINION TRANSMISSION, INC., ET AL.,
INTERVENORS

———

On Petition for Review of Orders
of the Federal Energy Regulatory Commission

———

*Barbara K. Heffernan* argued the cause for petitioner. With her on the briefs were *Debra Ann Palmer*, *William S. Lavarco*, *Beverly J. Burke*, *Bernice K. McIntyre*, and *Rose T. Lennon*.

*Paula M. Carmody* and *Cynthia G. Warren* were on the brief for intervenor Maryland People's Counsel.

*Judith A. Albert*, Senior Attorney, Federal Energy Regulatory Commission, argued the cause for respondent.

With her on the brief were *Cynthia A. Marlette*, General Counsel, and *Robert H. Solomon*, Solicitor.

*Christopher T. Handman* argued the cause for intervenors Dominion Transmission, Inc., et al. On the brief were *Georgia B. Carter*, *Margaret H. Peters*, *J. Patrick Nevins*, *Catherine E. Stetson*, *Jessica L. Ellsworth*, *Charles H. Shoneman*, *Kirstin E. Gibbs*, *David L. Wochner*, *Jason F. Leif*, and *Peter I. Trombley*.

Before: SENTELLE, *Chief Judge*, ROGERS and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*: The Federal Energy Regulatory Commission ("FERC") approved a project that will expand the liquefied natural gas ("LNG") capacity of the Cove Point LNG Terminal ("Cove Point"). Washington Gas Light Company ("WGL"), a local distribution company that receives natural gas from Cove Point, brought a petition for review arguing the expansion project will cause severe leakage throughout its distribution system. We find that substantial evidence supports FERC's conclusion that any threat of increased leakage is due to defects in WGL's system, but we grant WGL's petition because substantial evidence does not support FERC's conclusion that WGL can address safety concerns before the project's in-service date.

I

Dominion Cove Point LNG, LP and Dominion Transmission, Inc. (collectively "Dominion") applied to FERC for authorization to build the Cove Point Expansion Project ("Expansion"). Slated for completion in November

2008, the Expansion will significantly increase Cove Point's LNG output and cause LNG that has not been blended with traditional natural gas to flow to local distribution companies.[1]  WGL objected to the Expansion, arguing that the influx of LNG would cause its distribution system in the Mid-Atlantic region to suffer severe leakage.  It pointed out that in the two-year period after it began receiving a limited amount of unblended LNG from Cove Point in its Prince George's County, Maryland ("PG County") facilities, starting in August 2003, those facilities experienced a sixteen-fold increase in leakage.  WGL also submitted a report finding the low heavy-hydrocarbon content of LNG caused the seals inside of the couplings connecting its pipes to leak.

To address WGL's concerns, FERC permitted the parties to submit written evidence and held a "procedural conference" to hear witness testimony.  It then issued several orders approving the Expansion.  *See Dominion Cove Point LNG,* LP, 115 F.E.R.C. ¶ 61,337 (2006) ("*Certificate Order*"); *Dominion Cove Point LNG, LP*, 118 F.E.R.C. ¶ 61,007 (2007) ("*Rehearing Order*").  These orders found factors such as damaged couplings, colder temperatures, and changes in pressure played a larger role in creating the leaks in PG County than the LNG.  *Certificate Order* at 62,268.  Specifically, FERC found LNG "would not have adversely affected WGL's system if a subset of the compression couplings had not been compromised during the installation process."  *Rehearing Order* at 61,029.  It also concluded the Expansion could proceed consistent with the public interest because "there is time for WGL to complete any remaining

---

[1] LNG is natural gas that has been supercooled into liquid form, reheated back into gas form at natural gas terminals like Cove Point, and then shipped to customers through local distribution companies like WGL.  LNG has a lower heavy-hydrocarbon content than traditional natural gas.

corrective measures that are needed on its system so that it can safely accommodate regasified LNG." *Rehearing Order* at 61,023–24. Finally, it rejected WGL's claim that the procedural conference was inadequate. *Id.* at 61,024–28. WGL petitions this court for review of the orders approving the Expansion, with intervenor Maryland People's Counsel[2] filing a brief in support of WGL's petition, and intervenor Dominion filing a brief in support of FERC's opposition.

II

Under section 3 of the National Gas Act ("NGA"), FERC "shall" approve any application to import natural gas from abroad "unless, after opportunity for hearing, it finds that the proposed exportation or importation will not be consistent with the public interest." 15 U.S.C. § 717b(a). Under section 7, FERC "shall" approve construction of facilities for transportation or sale of natural gas if the project "is or will be required by the present or future public convenience and necessity." *Id.* § 717f(e). Here, FERC approved different portions of the Expansion under sections 3 and 7. We review FERC's orders under "the arbitrary and capricious standard and uphold FERC's factual findings if supported by substantial evidence." *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365 (D.C. Cir. 2003); 15 U.S.C. § 717r(b). When considering FERC's evaluation of "scientific data within its technical expertise," we afford FERC "an extreme degree of deference." *Nat'l Comm. for the New River, Inc. v. FERC*, 373 F.3d 1323, 1327 (D.C. Cir. 2004).

---

[2] The Maryland People's Counsel is "an agency of the State of Maryland authorized to represent the interests of the consumers of the state in proceedings before federal regulatory agencies." *Md. People's Counsel v. FERC*, 761 F.2d 768, 772 (D.C. Cir. 1985).

WGL argues the Expansion will be inconsistent with the public-interest requirements of the NGA because the influx of unblended LNG will cause leakage throughout its system. While WGL disagrees with much of FERC's analysis, this case boils down to the validity of two of FERC's ultimate findings: (A) the LNG "would not have adversely affected WGL's system [in PG County] if a subset of the compression couplings had not been compromised during the installation process"; and (B) "there is time for WGL to complete any remaining corrective measures that are needed on its system so that it can safely accommodate regasified LNG." *Rehearing Order* at 61,023–24, 61,029. We conclude substantial evidence supports FERC's finding that defects in WGL's system caused the PG County leaks, but does not support its finding that WGL will be able to address safety concerns before the Expansion's in-service date.

A

FERC found the influx of unblended LNG "would not have adversely affected WGL's system [in PG County] if a subset of the compression couplings had not been compromised during the installation process." *Id.* at 61,029. WGL disputes this conclusion by noting its system functioned properly for decades after it installed the couplings, and the increased leak rates only began after August 2003, when Cove Point started sending LNG to its PG County facilities. In the two-year period that followed, these facilities experienced a sixteen-fold increase in leaks, from 62 repairs per year to 1,041 repairs per year, while the rest of WGL's system experienced only typical seasonal leakage. WGL also points to a report by the ENVIRON International Corporation, which found the low heavy-hydrocarbon content of LNG caused the seals inside of WGL's couplings to shrink and thus contributed to leakage.

FERC rejected WGL's argument and concluded the leaks in PG County occurred because WGL applied hot tar to its couplings during the installation process decades ago. FERC explained the hot tar damaged the seals inside of these couplings to such an extent that any comparatively minor leak-inducing change, like low heavy-hydrocarbon LNG or cold temperatures, could cause leakage. *Id.* In support, FERC pointed to testimony by the President of Normac, the manufacturer of 25% of WGL's couplings, explaining the hot tar process exposed the couplings' seals to temperatures of up to 400 degrees Fahrenheit. FERC also cited a study by Neave & Associates, which found applying hot tar at such temperatures damaged the seals. Finally, it pointed to WGL's internal documents from the 1960s, which demonstrated WGL knew applying hot tar to the couplings caused them to leak. *Certificate Order* at 62,271–72.[3]

While FERC admitted it could not "rule out fluctuations in [heavy hydrocarbons] as a possible contributor [to the increased leakage in PG County]," it found other factors, such as hot tar, changes in operating pressure, and decreases in ground temperature, were "more significant causative factors of the leaks experienced by WGL in Prince George's County." *Id.* at 62,268, 62,276. In support, it pointed to a study by the Natural Gas Technology Centre, which found

---

[3] WGL argues FERC's evidence is incomplete because it focuses on Normac couplings, whereas 75% of WGL's couplings were manufactured by Dresser. But FERC pointed to record evidence that Dresser couplings were also damaged by hot tar. *Rehearing Order* at 61,032–33. WGL also claims that LILCO, a local distribution company that never used hot tar, experienced increased leakage once it began receiving LNG. But as FERC explained, LILCO's system leaked because LILCO installed its couplings improperly. *Id.* at 61,038–39.

decreases in temperature have a larger impact on leak rates than reductions in the heavy-hydrocarbon content of the gas. *Id.* at 62,270–71. FERC also noted that even though Cove Point began shipping LNG to PG County in August 2003, the leaks did not spike until the winter and then went back to normal levels in the spring. The same pattern recurred the following year. *Rehearing Order* at 61,032.

We conclude substantial evidence supports FERC's conclusion that the unblended LNG would not have caused the leaks if the couplings had not been damaged by the hot tar. We do not dispute that WGL operated its system for decades after applying the hot tar and only experienced the high leak rates after it began receiving LNG in PG County. But at the same time, the PG County facilities received LNG for months without experiencing increased leakage, and only suffered those leaks when the weather became cold. These facts are consistent with FERC's finding—based on reports, studies, and WGL's internal documents—that WGL's couplings were so damaged by the hot tar that its distribution system became susceptible to the confluence of multiple leak-inducing factors, such as LNG and cold weather. Given the "extreme degree of deference" we afford FERC's analysis of such technical matters, we will not second-guess this finding.

B

WGL points out that even if the condition of its couplings caused the PG County leaks, those conditions exist through its entire system—not just in the 14% of the system in PG County. WGL claims the Expansion will be inconsistent with the public interest because it cannot possibly replace the couplings in the rest of its system before the Expansion's November 2008 in-service date. Indeed, WGL informed FERC that replacing all of the couplings in time was

"not a viable option" because that could take "up to a decade or more to perform given the number of trained contractors available to perform the work." Answer of WGL to Mot. for Summ. Disposition 11 & n.23. WGL added that while measures like re-injecting heavy hydrocarbons into the LNG could resolve some leak problems, the efficacy of such measures is uncertain. *Id.* at 11.

FERC responded to WGL's safety concerns by finding "there is time for WGL to complete any remaining corrective measures that are needed on its system so that it can safely accommodate regasified LNG." *Rehearing Order* at 61,023–24. The *only* evidence FERC offered to support this finding is that WGL has effectively curbed the leaks in PG County by replacing damaged couplings and reducing operating pressure. *Id*. at 61,023–24. Yet, this merely shows that more than three years after leaks spiked in PG County, WGL has finally been able to fix this portion of its system. It does not even begin to suggest WGL will be able to fix the other 86% of its system before the Expansion begins operations in a couple of months. For example, it does not explain how WGL can retain a sufficient number of trained contractors to perform the work in such short order. Perhaps realizing its orders are inadequate, FERC raises several alternate arguments to this court—for example, claiming that any leaks will not pose a safety hazard. *See* Respt.'s Br. 21; Oral Argument 44:18–45:10. Since FERC did not rely on these rationales in its orders, we have no authority to uphold its conclusions on this basis. *Williams Gas Processing-Gulf Coast Co. v. FERC*, 373 F.3d 1335, 1345 (D.C. Cir. 2004).

Having found WGL's system is defective, FERC had to explain why the Expansion could nevertheless proceed consistent with the public interest requirements of sections 3 and 7 of the NGA. FERC attempted to carry this burden by

concluding WGL will be able to fix its facilities before the Expansion's in-service date, but did not support this finding with substantial evidence. Accordingly, we conclude FERC failed to carry out its obligation of ensuring the Expansion can go forward consistent with the public interest.[4]

## III

We grant WGL's petition for review, vacate the orders to the extent they approve the Expansion, and remand the case so FERC can more fully address whether the Expansion can go forward without causing unsafe leakage.[5]

*So ordered.*

---

[4] WGL also claims FERC disregarded its own precedent by approving the Expansion without requiring Dominion to pay the costs of adapting WGL's system to accommodate LNG or conditioning the approval upon resolution of the safety concerns. *See Cove Point LNG Ltd. P'ship*, 98 FERC ¶ 61,270 (2002); *Colorado Interstate Gas Co.*, 94 FERC ¶ 61,382 (2001); *Columbia Gas Transmission Corp.*, 1 FERC ¶ 61,312 (1977). To the extent WGL argues Dominion must pay to fix WGL's system, we reject that claim because unblended LNG meets the specifications WGL accepted in its tariff and FERC reasonably concluded WGL should be responsible for paying to adapt its system to fulfill its commitments. *Rehearing Order* at 61,020–21. We need not decide the safety portion of WGL's precedential argument because we are already remanding to FERC to address the safety concerns.

[5] WGL raises several other challenges but we find them without merit. For example, FERC allowed the parties to make written submissions and held a procedural conference. WGL claims these procedures were inadequate but fails to explain why the technical issues here required more process than FERC normally has the discretion to afford. *See Lomak Petroleum, Inc. v. FERC*, 206 F.3d 1193, 1199 (D.C. Cir. 2000).